[Nos. F011493. F012570, F012957. Fifth Dist. Feb. 21, 1991.]

ZORA S. GILL, Plaintiff and Appellant, v.
PHYLLIS HUGHES et al., Defendants and Respondents.

**COUNSEL**

Lawrence Silver for Plaintiff and Appellant.

Rushfeldt, Shelley & Drake, Randall L. Shelley, Greines, Martin, Stein & Richland, Marc J. Poster, Barbara W. Ravitz, Roxanne Huddleston, Noriega & Alexander, Joseph Noriega, Jeffrey A. Green and Robert J. Noriega for Defendants and Respondents.

## OPINION

**BEST, P. J.**—Plaintiff, Zora S. Gill, M.D., appeals from the order dismissing his complaint, the order denying his motion for reconsideration of an earlier order denying his motion to tax costs, i.e., the award of attorney fees and costs to defendants, and the order denying his motion to strike defendants' supplemental memorandum of costs and partially denying his motion to tax those supplemental costs, i.e., the award of postjudgment attorney fees and costs. We affirm.

### STATEMENT OF THE CASE

Following the denial of his petition for writ of mandate in the superior court, and during the pendency of the appeal of that denial, plaintiff filed this complaint. The writ petition sought review of administrative proceedings which culminated in plaintiff being denied full surgical staff privileges at defendant Mercy Hospital.[1]

On appeal, this court affirmed the trial court's denial of the writ petition finding that substantial evidence supported the decisions of the hospital board, the ad hoc committee and the trial court that plaintiff " 'exhibited a pattern of substandard surgical technique for vascular and complex major surgical cases' " and " 'exhibited a pattern of poor medical judgment in connection with major surgical cases.' " (*Gill* v. *Mercy Hospital* (1988) 199 Cal.App.3d 889, 898 [245 Cal.Rptr. 304].) This court further held plaintiff was not denied a fair hearing.

The complaint seeks damages for violations of plaintiff's constitutional rights, violations of California's antitrust statute (the Cartwright Act), interference with existing business relations, interference with prospective business advantage, intentional and negligent infliction of emotional distress, and slander per se. The trial court sustained defendants' demurrer as to the first three causes of action and stayed those causes of action on the

---

[1] Pursuant to plaintiff's request, we take judicial notice of the reporter's transcript of testimony and proceedings of the writ of mandate hearing held on November 6, 1986. (Evid. Code, § 452, subd. (d).)

ground that they were based upon the same subject matter as the relief sought in the writ action which was then pending on appeal. The court also sustained with leave to amend the demurrer to the ninth cause of action for slander per se. A second demurrer to the amended cause of action for slander per se was thereafter sustained without leave to amend on the ground that the alleged slanderous statements were not reasonably susceptible of a defamatory meaning as they appeared to be statements of opinion.

After this court's opinion upholding the limitation of plaintiff's staff privileges became final, the trial court granted summary judgment to defendants on the remaining causes of action. The trial court held that this action arose out of the proceedings concerning defendants' review of plaintiff's staff privileges and therefore was barred by "former adjudication by stare decisis and res adjudicata and collateral estoppel." The court also awarded defendants attorney fees as the prevailing parties on the civil rights claims and later entered an award of postjudgment costs, including attorney fees.

## DISCUSSION

I. *Whether the Trial Court Erred in Granting Summary Judgment on the Grounds of Res Judicata and Collateral Estoppel*

■ "Summary judgment is an appropriate remedy when the doctrine of res judicata in its subsidiary form of collateral estoppel refutes all triable issues of fact suggested by the pleadings." (*Southwell* v. *Mallery, Stern & Warford* (1987) 194 Cal.App.3d 140, 144 [239 Cal.Rptr. 371].) ■ A party is collaterally estopped from relitigating an issue " 'if (1) the issue necessarily decided at the previous [proceeding] is identical to the one which is sought to be relitigated; (2) the previous [proceeding] resulted in a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the prior [proceeding].' " (*People* v. *Sims* (1982) 32 Cal.3d 468, 484 [186 Cal.Rptr. 77, 651 P.2d 321].) ■ The question here is whether the issue of plaintiff's competence, which was decided against him in the writ proceeding, bars the fourth through eighth causes of action in the complaint.

In *Westlake Community Hosp.* v. *Superior Court* (1976) 17 Cal.3d 465 [131 Cal.Rptr. 90, 551 P.2d 410], a physician filed a complaint for tort damages against a hospital and members of its staff following revocation of her medical staff privileges. The complaint alleged this revocation was "the result of a malicious conspiracy, engineered by all of the named defendants in order to destroy [plaintiff's] medical practice and to restrain competition in order to benefit each member of the conspiracy." (*Id.* at p. 470.) The

complaint sought recovery on the theories of intentional and unlawful interference with the right to pursue and practice a lawful calling and trade; conspiracy to restrain competition; intentional infliction of emotional distress; and fraud and deceit. (*Ibid.*) Although the physician had exhausted the hospital's internal remedies in an unsuccessful attempt to obtain reinstatement, she had not sought judicial review by mandamus to compel her readmission. The California Supreme Court held that this omission barred the tort action.

Analogizing the case to the requirement of a successful termination in a malicious prosecution action, the *Westlake* court reasoned that plaintiff's tort action "is necessarily premised on an assertion that the hospital's decision to revoke plaintiff's privileges was itself erroneous and unjustified. . . . [S]o long as such a quasi-judicial decision is not set aside through appropriate review procedures the decision has the effect of establishing the propriety of the hospital's action. [Citation.] Accordingly, we conclude that plaintiff must first succeed in overturning the quasi-judicial action before pursuing her tort claim against defendants." (*Westlake Community Hosp.* v. *Superior Court, supra,* 17 Cal.3d 465, 484.) This "judicial exhaustion" doctrine is a species of res judicata and collateral estoppel. (*Knickerbocker* v. *City of Stockton* (1988) 199 Cal.App.3d 235, 241 [244 Cal.Rptr. 764].) Thus, here, if plaintiff's fourth through eighth causes of action are premised on an assertion that defendants' decision to limit plaintiff's privileges was erroneous and unjustified, they are barred under *Westlake.*

Plaintiff concedes that the complaint alleges the same underlying facts as the writ petition. However, plaintiff asserts that these allegations concerning the peer review proceeding were made for different purposes. With respect to the antitrust violations alleged in the fourth cause of action, plaintiff contends the peer review proceedings were one of a series of anticompetitive actions taken by defendants which began two years earlier. As to the remaining causes of action, plaintiff again argues that the peer review proceedings were but one of a series of actions by which the defendants interfered with his business relations and caused him emotional distress. Plaintiff contends the other alleged actions "which occurred *outside of the peer review proceedings at Mercy* are sufficient to support these causes of action."

■  California courts employ the "primary rights" theory to determine the scope of causes of action. (*Takahashi* v. *Board of Education* (1988) 202 Cal.App.3d 1464, 1474 [249 Cal.Rptr. 578].) Under this theory, there is only a single cause of action for the invasion of one primary right. However, the significant factor is the harm suffered. The fact that the same facts are involved in both suits is not conclusive. (*Agarwal* v. *Johnson* (1979) 25 Cal.3d 932, 954-955 [160 Cal.Rptr. 141, 603 P.2d 58].)

Plaintiff's fourth cause of action alleges defendants are seeking to effectuate a boycott and drive plaintiff out of business. Plaintiff alleges defendants entered into a conspiracy to preclude him from continued competition at Mercy Hospital and from practicing in California, if not the United States, by filing an improper "section 805 report" (Bus. & Prof. Code, § 805, subd. (b)) and "section 423 report" (42 U.S.C. § 11133). As evidence of this boycott, plaintiff alleges defendants: instigated a spurious, biased review of plaintiff's surgical practice at Memorial Hospital and Mercy Hospital; filed false and unsupported charges against plaintiff; improperly denied plaintiff full surgical privileges; failed to follow proper and fair procedures in processing the charges; made untrue, defamatory statements that plaintiff was not competent before, during and after the pendency of peer review proceedings at Mercy Hospital; failed to provide plaintiff with legal representation at the hearing; failed to provide plaintiff with all of the documentary evidence he requested; and failed to process plaintiff's application for full surgical privileges since March 1987.

■ Plaintiff contends this cause of action charges defendants with actions separate and apart from the bringing of the peer review proceeding at Mercy Hospital. However, plaintiff has asserted the same primary right, i.e., the right to full surgical privileges at Mercy Hospital, as the basis of both the boycott alleged in the fourth cause of action and the writ proceeding. With the exception of the 1987 application for privileges, the facts set forth by plaintiff as evidence of this alleged boycott either relate to the peer review proceeding or are a consequence of that proceeding. It was found in the writ proceeding that the review at Mercy was not spurious or biased, the charges were not false, the denial of full surgical privileges was proper, and plaintiff was not denied a fair hearing. Defendants' dissemination of the restrictions placed on plaintiff's medical staff privileges, i.e., the "section 805 report" and the "section 423 report," was required by law as a consequence of the outcome of the peer review proceeding. (Bus. & Prof. Code, § 805, subd. (b); 42 U.S.C. § 11133.) Further, any statements regarding plaintiff's competence cannot be defamatory because the issue of his competence was decided against him in the writ proceeding. (*Gilbert* v. *Ben-Asher* (9th Cir. 1990) 900 F.2d 1407, 1411.) Finally, the trial court could not review the alleged failure to process plaintiff's 1987 application because plaintiff had not exhausted his administrative remedies as to that application before filing this complaint. (*Bollengier* v. *Doctors Medical Center* (1990) 222 Cal.App.3d 1115, 1131 [272 Cal.Rptr. 273].) Thus, despite plaintiff's attempt to characterize the fourth cause of action as being based on events occurring outside the peer review proceeding, when analyzed, it becomes apparent the fourth cause of action is premised on the assertion that defendants' decision to limit plaintiff's privileges was erroneous and

unjustified. Therefore, the fourth cause of action is barred under *Westlake Community Hosp.* v. *Superior Court, supra,* 17 Cal.3d 465.

Relying on *Pinhas* v. *Summit Health, Ltd.* (9th Cir. 1989) 894 F.2d 1024, plaintiff argues that *Westlake* does not bar his fourth cause of action for state antitrust violations. In *Pinhas,* the court held a physician was not barred from pursuing a federal antitrust claim under the Sherman Act (15 U.S.C. § 1) while the hospital peer review proceedings were ongoing. Since the California antitrust statute is patterned after the Sherman Act, plaintiff reasons that *Westlake* is not controlling and he should be permitted to pursue his antitrust claim. However, in *Mir* v. *Little Co. of Mary Hosp.* (9th Cir. 1988) 844 F.2d 646, the Ninth Circuit held that when antitrust violations arising under California law are alleged, the physician's failure to set aside the hospital review committee's decision bars the claim under *Westlake.* (*Mir, supra,* at pp. 650-651.) The *Pinhas* court noted this distinction and concluded that the preclusion of the state common law claims in *Mir* was inapposite to Dr. Pinhas's federal antitrust claim. (*Pinhas* v. *Summit Health, Ltd., supra,* 894 F.2d 1024, 1031.) Here, it is California antitrust violations which are at issue. Therefore, under *Mir,* plaintiff's fourth cause of action is barred.[2]

Plaintiff's fifth and sixth causes of action allege defendants interfered with both existing and prospective professional and economic relationships by filing false and unjustified "section 805" and "section 423" reports, which were then disseminated to other hospitals. However, the writ proceeding established that the conclusions reached in the peer review proceeding, which were then reflected in these reports, were not false or unjustified. Thus, collateral estoppel bars plaintiff's fifth and sixth causes of action.

Plaintiff's seventh and eighth causes of action allege intentional and negligent infliction of emotional distress. Plaintiff contends defendants owed plaintiff a duty not to interfere unjustly with his right to full surgical privileges and to use due care in any matters relating to medical staff applications. Thus, again, plaintiff is basing his causes of action on the assertion that defendants' decision to restrict his surgical privileges was erroneous and unjustified. Since this issue was resolved against plaintiff in the writ proceeding, these causes of action are also barred.

---

[2] The Supreme Court has granted certiorari in *Pinhas* v. *Summit Health, Ltd., supra* (cert. granted (1990) __ U.S. __ [110 L.Ed.2d 660, 110 S.Ct. 3212]). Plaintiff has requested this court to take judicial notice of the brief filed in the United States Supreme Court for petitioners in *Summit Health Ltd.* v. *Pinhas,* Docket No. 89-1629, for the purpose of demonstrating that the portion of the Ninth Circuit opinion relied on by plaintiff will be unaffected by the Supreme Court opinion. However, since *Pinhas* v. *Summit Health, Ltd., supra,* 894 F.2d 1024 is inapposite to this case, the brief filed in the Supreme Court is irrelevant. Therefore, plaintiff's request is denied.

In sum, plaintiff is attempting to relitigate the issue of his competence in the fourth through eighth causes of action. These causes of action arise either directly from, or as a result of, the alleged erroneous and unjustified decision to limit plaintiff's surgical privileges. Despite the different theories presented by the complaint, plaintiff has asserted the same primary right as he did in the writ proceeding, i.e., the right to full surgical privileges at Mercy Hospital. Therefore, the trial court properly granted summary judgment to defendants on the fourth through eighth causes of action.

## II. *Whether Plaintiff Stated a Cause of Action for Slander Per Se*

The complaint alleges defendants made the following statements concerning plaintiff:

"(a) 'He is an incompetent surgeon and needs more training.'

"(b) 'Doctor, that's the way we operate at Mercy. We don't have everything written as bylaws. I can assure you that you will not be staying around much longer. Don't worry. You are asking about the availability and number of monitors. And you probably will not need them at all.'

"(c) 'Dr. Gill, you are not welcome in Bakersfield. You do not know what can happen to a new surgeon like you. They usually cannot stay in this town for more than 2-3 months. You are young and should not have any problem in moving to another place. We will provide you good recommendation letters.' "

Plaintiff contends these statements were slanderous per se because they tended to injure him in his profession "by imputing to him dishonesty and a general disqualification of the ability to practice competent surgery, and had a natural tendency to lessen the profits from plaintiff's profession." The trial court sustained defendants' demurrer to this cause of action without leave to amend on the ground that "[t]he allegations are not 'reasonably susceptible of a defamatory meaning' [citation]. They appear to be statements of opinion."

A general demurrer admits the truth of all factual allegations in the complaint. (*Conklin* v. *Sloss* (1978) 86 Cal.App.3d 241, 248 [150 Cal.Rptr. 121].) The plaintiff's ability to prove these allegations or the possible difficulty in making such proof does not concern the reviewing court. (*Ibid.*) However, the demurrer does not admit contentions, deductions or conclusions of fact or law. (*Loehr* v. *Ventura County Community College Dist.* (1983) 147 Cal.App.3d 1071, 1076 [195 Cal.Rptr. 576].) Further, unless clear error or abuse of discretion is demonstrated, the trial court's judgment

of dismissal following the sustaining of a demurrer will be affirmed on appeal. (*Ibid.*)

■■■ "An essential element of defamation is that the publication in question must contain a false statement of *fact.*" (*Carr* v. *Warden* (1984) 159 Cal.App.3d 1166, 1169 [206 Cal.Rptr. 162].) Traditionally, courts have distinguished statements of opinion from statements of fact, treating the one as constitutionally protected and imposing on the other civil liability for its abuse. (*Baker* v. *Los Angeles Herald Examiner* (1986) 42 Cal.3d 254, 260 [228 Cal.Rptr. 206, 721 P.2d 87].) However, in *Milkovich* v. *Lorain Journal Co.* (1990) 497 U.S. __ [111 L.Ed.2d 1, 110 S.Ct. 2695], the Supreme Court concluded that an additional separate constitutional privilege for "opinion" was not required to ensure the freedom of expression guaranteed by the First Amendment. (*Id.* at p. __ [111 L.Ed.2d at p. 19].) Rather, where private individuals are involved, protecting statements which do not contain a provably false factual connotation and statements that cannot " 'reasonably [be] interpreted as stating actual facts' about an individual," prevents a " 'forbidden intrusion of the field of free expression.' " (*Id.* at pp. __-__ [111 L.Ed.2d at p. 19].)

Thus, here, the alleged defamatory statements are not protected if they imply an assertion of false objective fact. The statement that plaintiff "is an incompetent surgeon and needs more training" implies a knowledge of facts which lead to this conclusion and further is susceptible of being proved true or false. The fact that an evidentiary hearing was held regarding plaintiff's surgical technique and judgment supports this conclusion. Since the statement implies that plaintiff is generally disqualified for his profession, it is defamatory if it is false. (Civ. Code, § 46.) Consequently, the trial court erred in finding this statement was not defamatory because of being an "opinion." However, the remaining statements set forth in the complaint cannot reasonably be interpreted as stating actual facts about plaintiff and therefore do not constitute slander.

Although the reason stated by the trial court in sustaining the demurrer to the slander cause of action was erroneous, that error was harmless. Truth is a complete defense to civil liability for defamation. (5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 494, p. 583.) As noted above, it was determined in the writ proceeding that plaintiff's surgical technique was substandard and that his medical judgment was poor in connection with major cases. (*Gill* v. *Mercy Hospital, supra,* 199 Cal.App.3d 889, 898.) Thus, the issue of plaintiff's competence was decided against him in the writ proceeding. Since that decision is final, plaintiff must be considered incompetent in this proceeding. (*Gilbert* v. *Ben-Asher, supra,* 900 F.2d 1407,

1411.) Consequently, defendants are entitled to judgment on the ninth cause of action for slander.

### III.   *Whether the Trial Court Erred in Awarding Defendants Attorney Fees and Costs*

#### A.   *The judgment awarding attorney fees entered December 27, 1988.*

After defendants submitted memoranda of costs requesting attorney fees under 42 United States Code section 1988, plaintiff moved to tax costs. This motion was denied on December 16, 1988. Plaintiff filed a motion for reconsideration of the order on December 22, 1988. The judgment awarding attorney fees and costs was entered on December 27, 1988.

The hearing on plaintiff's motion for reconsideration was held on January 30, 1989. However, the court did not rule on the motion until April 26, 1989. The court granted plaintiff's motion at that time and ordered defendants to resubmit their itemized statements of attorney fees. On June 14, 1989, the court denied plaintiff's motion for reconsideration. Plaintiff filed a notice of appeal "from the Order Denying the Motion for Reconsideration of Order Denying Motion to Tax Costs" on July 13, 1989.

■   Plaintiff argues the "June 14, 1989 order awarding $58,833.75 in attorneys' fees should be reversed." However, the June 14 order denied the motion for reconsideration. The order awarding attorney fees was entered on December 27, 1988. As discussed below, the appeal from this judgment is untimely. Consequently, this court does not have jurisdiction to review this award of attorney fees. (*Taper* v. *City of Long Beach* (1982) 129 Cal.App.3d 590, 607 [181 Cal.Rptr. 169].)

An order denying a motion to tax costs, made after the judgment has been entered, is appealable. (*Berman* v. *City of West Hollywood Rent Stabilization Dept.* (1988) 197 Cal.App.3d 837, 842 [243 Cal.Rptr. 144].) However, where, as here, the motion for reconsideration of an appealable order is based on exactly the same factual showing as was offered in support of the original motion, the order denying the motion for reconsideration is not appealable. (*Tunis* v. *Barrow* (1986) 184 Cal.App.3d 1069, 1075-1076 [229 Cal.Rptr. 389].)[3] Thus, plaintiff could not appeal from the June 14, 1989,

---

[3] When a motion for reconsideration raises new facts, the courts have reached different conclusions regarding the appealability of the denial of that motion. (Compare *Santee* v. *Santa Clara County Office of Education* (1990) 220 Cal.App.3d 702 [269 Cal.Rptr. 605] [order denying a motion for reconsideration which raises new facts is appealable] with *Rojes* v.

order denying his motion for reconsideration. Rather, the appeal had to be taken from the order entered December 27, 1988.

California Rules of Court,[4] rule 2(a) requires that the notice of appeal be filed within 60 days of the mailing of the notice of entry of judgment or appealable order except as otherwise provided by statute or rule 3. Here, the notice of entry of the order was mailed on January 9, 1989. Thus, to be timely, the notice of appeal must come within rule 3.

Rule 3 applies when a party seeks postjudgment relief in the trial court. Rule 3(a) pertains to a new trial motion and states that when such a motion is filed and denied, "the time for filing the notice of appeal from the judgment is extended for all parties until 30 days after either entry of the order denying the motion or denial thereof by operation of law, but in no event may such notice of appeal be filed later than 180 days after the date of entry of the judgment whether or not the motion for new trial has been determined." Rule 3(b) applies to motions to vacate and again extends the time for filing the notice of appeal "until the earliest of 30 days after entry of the order denying the motion to vacate; or 90 days after filing the first notice of intention to move to vacate the judgment; or 180 days after entry of the judgment." "A motion for reconsideration under Code of Civil Procedure section 1008 is treated for purposes of rule 3 of the Rules of Court in the same manner as a motion for new trial or a motion to vacate." (*Blue Mountain Development Co.* v. *Carville* (1982) 132 Cal.App.3d 1005, 1009 [183 Cal.Rptr. 594].)

It is unclear from prior case law which of the two rules, rule 3(a) or rule 3(b), is applicable in a situation such as this. However, here, the time limits of either rule preclude the appeal.

In *Miller* v. *United Services Automobile Assn.* (1989) 213 Cal.App.3d 222 [261 Cal.Rptr. 515], the court held that Code of Civil Procedure section 660, which denies a new trial motion by operation of law 60 days after the notice of entry of judgment, applies to a motion for reconsideration. (*Miller, supra,* at p. 226.) Thus, the 30-day appeal extension following denial of the motion plus the 60 days for denial of the motion by operation of law indicates the maximum extension of appeal time under rule 3(a) is 90 days after notice of entry of judgment. (*Ibid.*)

In the present case, the order awarding attorney fees was entered on December 27, 1988, and notice of entry of the order was mailed on January

---

*Riverside General Hospital* (1988) 203 Cal.App.3d 1151 [250 Cal.Rptr. 435] [order denying motion for reconsideration is always nonappealable].)

[4] All rule references are to the California Rules of Court.

9, 1989. Under Code of Civil Procedure section 660, the trial court lost the power to rule on plaintiff's motion for reconsideration 60 days after notice of entry of the order was mailed on January 9, 1989, i.e., March 10, 1989. The court did not make its first ruling until April 26, 1989. Since the court had already lost jurisdiction, this order was a nullity. Plaintiff's notice of appeal was due 30 days after March 10, i.e., April 9, 1989.

Similarly, rule 3(b) extends time for filing the notice of appeal only until 90 days after filing the first notice of intention to move to vacate the judgment. Plaintiff's motion for reconsideration was filed on December 22, 1988. Thus, the last day for filing the notice of appeal under this rule was March 22, 1989.

Additionally, both rules 3(a) and 3(b) provide an absolute outer limit for extensions. The notice of appeal cannot be filed later than 180 days after entry of judgment. Here, judgment was entered December 27, 1988. Thus, the notice of appeal could not be filed after June 25, 1989. Having been filed on July 13, 1989, the notice of appeal was untimely.

B.  *The judgment awarding supplemental attorney fees*

The trial court awarded defendants supplemental costs and attorney fees of $3,494 incurred in connection with posttrial motions. ▮ Plaintiff contends the denial of his motion to tax these costs was error because the majority of these fees and costs were incurred in securing the award of attorney fees rather than in enforcing the judgment.

The attorney fees were awarded under 42 United States Code section 1988. Time spent in establishing entitlement to attorney fees awardable under section 1988 is also compensable. (*Clark* v. *City of Los Angeles* (9th Cir. 1986) 803 F.2d 987, 992.) Thus, the trial court did not err in awarding these additional fees to defendants.

IV.  *Whether Defendants Are Entitled to Attorney Fees on Appeal*

▮ Defendants contend they are *entitled* to recover attorney fees for legal services on appeal. An appellate court may exercise its power to award attorney fees to a prevailing defendant under 42 United States Code section 1988. However, the exercise of this power must be made under a much stricter standard than is applied to prevailing plaintiffs. Thus, defendants may receive attorney fees on appeal only if the plaintiff's appeal is frivolous, unreasonable or without foundation, even though not brought in subjective bad faith. (*Bugg* v. *Int. U. of Allied Indus. Workers of Am.* (7th Cir. 1982) 674 F.2d 595, 600.) Further, the standard focuses on the frivolity of the

plaintiff's appeal. (*Id.* at p. 600, fn. 10.) Consequently, the trial court's determination that the original action was frivolous or meritless is neither necessary nor sufficient to support an appellate award. (*Ibid.*)

Aside from stating they are *entitled* to fees on appeal, defendants provide no support for their request. Thus, defendants have failed to make an adequate showing of entitlement to attorney fees on appeal.

## DISPOSITION

The judgment is affirmed with costs to respondents.

Respondents' request for an award of attorney fees on appeal is denied.

Ardaiz, J., and Harris, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 23, 1991.