[No. B176052. Second Dist., Div. One. Apr. 20, 2005.]

ANN MARIE GALLANT, Plaintiff and Appellant, v.
CITY OF CARSON et al., Defendants and Respondents.

**COUNSEL**

Horowitz & Clayton, Craig A. Horowitz, Wayne D. Clayton and Richard G. Munoz for Plaintiff and Appellant.

Seyfarth Shaw, Lorraine H. O'Hara and Dennis C. DePalma for Defendants and Respondents.

**OPINION**

**MALLANO, J.**—An employee of a city sued the city and two of its employees for defamation and wrongful termination, claiming she was fired and defamed for exposing corruption in the city's bidding for trash collection. The defamation cause of action was stricken under the statute prohibiting strategic lawsuits against public participation (SLAPP) (Code Civ. Proc., § 425.16), and the employee appeals. We reverse because the employee "has established that there is a probability that [she] will prevail on the claim." (*Id.,* § 425.16, subd. (b)(1).) (All further statutory references are to the Code of Civil Procedure unless otherwise indicated.)

# I

## BACKGROUND

Ann Marie Gallant was general manager of the City of Carson. Her duties included overseeing the city's waste disposal services. As she explained in a declaration filed in connection with the hearing on defendants' special motion to strike under the anti-SLAPP statute: "On January 8, 2002, I received from Joyce Cagaanan, a Solid Waste Specialist who reported to me, a Facsimile dated January 2, 2002 from Robert Pryce to James Ambroso. . . . Pryce was at the time a contract attorney for the City of Carson. Ambroso was [an] executive representing [Browning-Ferris Industries of California, Inc.,] in the bid process concerning the Solid Waste Franchise Agreement for the City of Carson. Upon review of the fax, I realized that this was an unauthorized disclosure of Waste Management's confidential bid. I immediately reported this to the City Manager, Jerome Groomes. Groomes instructed me not to advise, discuss, contact or inform the City Council as to the receipt of the facsimile. Groomes stated that he would handle it. I advised Groomes that the whole City Council needed to be advised of the facsimile, and if he did not do so, I had no choice but to do so. Within weeks of advising the City Council of the bid rigging issue, law enforcement agencies, including the FBI, conducted an investigation surrounding the illegal conduct of city officials. I was interviewed by the FBI, and told them the truth." On September 17, 2003, Groomes told Gallant that she was being terminated.

Her declaration continued: "I learned from a number of subordinate employees in the Development Services Work Group that Groomes had spoken to staff members and community members and told them that I was terminated because I was incompetent. . . .

". . . I have also learned that Sybil Brown, a community member of Carson, told other persons at a Boards and Commissions training on September 20, 2003, that she was told by Groomes that I was terminated because I was incompetent.

". . . I was told by City Engineer Victor Rollinger, a managerial employee at the City of Carson, that in early 2003 during the period Groomes was lobbying for my termination, Assistant City Manager George Penn approached Mr. Rollinger and told Mr. Rollinger I had done something illegal with respect to a purchase order."

Although Gallant does not expressly state that she was not incompetent or deny doing anything illegal, the gist of her declaration is that she was terminated for reporting the misdeeds of Attorney Pryce to the city council and cooperating with the FBI regarding Pryce.

Gallant filed this suit for wrongful termination and defamation against the City of Carson and its city manager, Jerome Groomes, and assistant city manager, George Penn. With regard to her defamation claim, Gallant alleged that defendants "published false, unprivileged statements with malice, to non-interested third parties about Gallant. This statement included false and unprivileged accusations that Gallant was incompetent. The statements conveyed to Gallant's co-workers and other members of the public that she was incompetent, a statement known at the time to be false."

Defendants filed an anti-SLAPP motion, contending that (1) the alleged defamatory statements came within the scope of protected communications (see § 425.16, subd. (e)) and (2) Gallant could not demonstrate a probability of success on the merits (see *id.*, subd. (b)(1)). Gallant filed opposition papers, disputing both points. By order dated May 12, 2004, the trial court granted the motion and dismissed the case. Gallant appealed.

## II

## DISCUSSION

■ Assuming for the sake of discussion that the anti-SLAPP statute applies here, we reverse because Gallant "has established that there is a probability that [she] will prevail on the claim." (§ 425.16, subd. (b)(1).) By this we mean only that she has offered evidence, if credited at trial, demonstrating that she is likely to succeed.

■ The alleged statements—that Gallant is incompetent—are defamatory. "[T]he alleged defamatory statements are not protected if they imply an assertion of false objective fact. The statement that plaintiff 'is an incompetent [employee] . . .' implies a knowledge of facts which lead to this conclusion and further is susceptible of being proved true or false. . . . Since the statement implies that plaintiff is generally disqualified for [her] profession, it is defamatory if it is false. . . . Consequently, the trial court erred in finding this statement was not defamatory because of being an 'opinion.' " (*Gill v. Hughes* (1991) 227 Cal.App.3d 1299, 1309 [278 Cal.Rptr. 306], citation omitted.)

Accordingly, the facts contained in Gallant's declaration, if properly before the court as evidence, "establish[] that there is a probability that [she] will prevail on [her] claim [for defamation]." (§ 425.16, subd. (b)(1).)

Although defendants interposed evidentiary objections against Gallant's declaration, they did not seek or obtain rulings on them at the hearing. Defendants therefore waived their objections under *Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666 [25 Cal.Rptr.2d 137, 863 P.2d 207] (*Ann M.*), superseded by statute on another point as stated in *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, at pages 767–768 [107 Cal.Rptr.2d 617, 23 P.3d 1143]. In *Ann M.*, the Supreme Court stated: "In the trial court, defendants made a series of objections to evidence submitted by Ann M. in opposition to the summary judgment motion. The trial court did not rule on the objections. Because counsel failed to obtain rulings, the objections are waived and are not preserved for appeal." (*Ann M., supra*, 6 Cal.4th at p. 670, fn. 1.)

■ The *Ann M.* rule, applied in the summary judgment context, also governs anti-SLAPP motions because the two types of proceedings have similar standards. As our Supreme Court recently stated: "[The anti-SLAPP statute] establishes a procedure where the trial court evaluates the merits of the lawsuit using a summary-judgment-like procedure at an early stage of the litigation." (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 192 [25 Cal.Rptr.3d 298, 106 P.3d 958].) And as we stated at greater length in *Schoendorf v. U.D. Registry, Inc.* (2002) 97 Cal.App.4th 227 [118 Cal.Rptr.2d 313] (*Schoendorf*): " 'It is recognized, with the requirement [in the anti-SLAPP statute] that the court consider the pleadings and affidavits of the parties, the test is similar to the standard applied to evidentiary showings in summary judgment motions . . . and requires that the showing be made by competent admissible evidence within the personal knowledge of the declarant. . . . Averments on information and belief are insufficient. . . . As in a motion for summary judgment, the pleadings frame the issues to be decided.' . . .

■ " 'Generally, a party cannot simply rely on the allegations in its own pleadings, even if verified, to make the evidentiary showing required in the summary judgment context or similar motions . . . . The same rule applies to motions under [the anti-SLAPP statute]. Here, like motions under [the summary judgment statute], the pleadings merely frame the issues to be decided. Similarly, an averment on information and belief is inadmissible at trial, and thus cannot show a probability of prevailing on the claim. . . . "An assessment of the probability of prevailing on the claim looks to trial, and the evidence that will be presented at that time. . . . Such evidence must be admissible." ' " (*Schoendorf, supra*, 97 Cal.App.4th at p. 236, quoting *Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 654, 656 [49 Cal.Rptr.2d 620], overruled on another point in *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 68, fn. 5 [124 Cal.Rptr.2d 507, 52 P.3d 685].)

The anti-SLAPP statute states that "[i]n making its determination [whether the plaintiff has established that there is a probability that the plaintiff will prevail on the claim], the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) The statute is silent as to the kind of evidence required of the plaintiff.

The summary judgment statute, on the other hand, provides that "[i]n determining whether the papers show that there is no triable issue as to any material fact the court shall consider all of the evidence set forth in the papers, except that to which objections have been made and sustained by the court . . . ." (§ 437c, subd. (c).) And it further provides that "[s]upporting and opposing affidavits or declarations shall be made by any person on personal knowledge, shall set forth admissible evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavits or declarations." (*Id.*, subd. (d).)

In *Schoendorf*, we borrowed the evidentiary standards applicable to summary judgment motions and required that the plaintiff offer *admissible* evidence to substantiate her claim in opposition to an anti-SLAPP motion. Both types of proceedings require the trial court to assess the validity of the plaintiff's claim *on the merits*, and the same evidentiary standards should therefore govern both. Applying those standards here, defendants' objections to Gallant's declaration are deemed waived and the admissibility standard for anti-SLAPP motions is met.

We are not alone in applying the *Ann M.* rule in reviewing a trial court's decision on an anti-SLAPP motion. In *Slauson Partnership v. Ochoa* (2003) 112 Cal.App.4th 1005 [5 Cal.Rptr.3d 668], Division Seven of this court did just that, stating: "On appeal, [defendant] asks this court to consider his evidentiary objections to [plaintiff's] declarations even though he concedes he did not obtain any ruling on the objections in the trial court. In connection with a summary judgment motion, '[t]rial courts have a duty to rule on evidentiary objections. Part of the judicial function in assessing the merits of a summary judgment or adjudication motion involves a determination as to what evidence is admissible and that which is not.' . . . Where the trial judge fails to rule on objections to evidence presented at a summary judgment motion, the objections are deemed waived on appeal. . . . Accordingly, because a motion to strike [a SLAPP suit] is akin to a summary judgment motion . . . , in reviewing the trial court's order denying the motion, we consider all the evidence presented by the parties." (*Id.* at p. 1014, fn. 4, citations omitted.)

More recently, in *Gallagher v. Connell* (2004) 123 Cal.App.4th 1260 [20 Cal.Rptr.3d 673], Division Seven of this court held that, in opposing an anti-SLAPP motion, a plaintiff may show a probability of success on the merits where the supporting evidence is inadmissible but the defendant fails to make a proper objection. Although the summary judgment statute addresses the use of "admissible evidence" and objections, the anti-SLAPP statute does not. As Division Seven explained: "We recognize an argument could be made a court, in ruling on a SLAPP motion, should determine the admissibility of the plaintiff's proffered evidence if the defendant at least raises the issue of admissibility even if she has not composed a technically sufficient objection. Allowing the plaintiff to defeat a SLAPP motion with evidence which supports the plaintiff's cause of action but which would be inadmissible at trial defeats the purpose of the anti-SLAPP statute to provide 'a fast and inexpensive unmasking and dismissal' of meritless lawsuits. . . .

"We do not find this argument persuasive. We do not quarrel with the proposition the Legislature intended ' "to prevent SLAPPs by ending them early and without great cost to the SLAPP target." ' But the Legislature also intended 'to avoid jeopardizing meritorious lawsuits.' Requiring the defendant to clearly state the specific ground of her objection to the plaintiff's evidence maintains this balance between the interests of the defendant and the plaintiff." (*Gallagher v. Connell*, *supra*, 123 Cal.App.4th at pp. 1268–1269, fns. omitted.) As one treatise has noted, "the 'rule' that objections that are not made are waived is found only in the summary judgment statute . . . but it is certainly observed in other situations in practice." (Younger on California Motions (2004 ed.) § 2:51, p. 38.)

■ Further, an attorney's obligation to request a ruling from the trial court—outside the summary judgment context—is long and well established. "Beginning in 1872 with *People v. Sanford* (1872) 43 Cal. 29, 32, the California Supreme Court has consistently held that when a judge fails to rule on evidentiary objections during a trial, they are deemed waived. . . . *Ann M.* [is] merely the application of the trial rule concerning waiver of evidentiary objections in the law and motion context." (*City of Long Beach v. Farmers & Merchants Bank* (2000) 81 Cal.App.4th 780, 784 [97 Cal.Rptr.2d 140], citations omitted (*City of Long Beach*).)

For example, the high court has stated: "If the trial court's failure to hear or rule on [a] new trial motion appears to be inadvertent, the defendant must make some appropriate effort to obtain the hearing or ruling. . . . ' "[W]here the [trial] court, through inadvertence or neglect, neither rules nor reserves its ruling . . . the party who objected must make some effort to have the court *actually rule*. If the point is not pressed and is forgotten, [the party] may be deemed to have waived or abandoned it, just as if he had failed to make the

objection in the first place." ' " (*People v. Braxton* (2004) 34 Cal.4th 798, 813 [22 Cal.Rptr.3d 46, 101 P.3d 994]; accord, 3 Witkin, Cal. Evidence (4th ed. 2000) Presentation at Trial, § 389, p. 482.)

In a case involving an evidentiary objection, the Court of Appeal held that "[a]lthough, when first offered, [the contract] was objected to on the ground that it was not binding on defendants, the trial court did not rule on the objection, but suggested instead, that a foundation be laid with respect to its identification. Counsel for defendants did not request a ruling nor did he press his objection when the offer was subsequently renewed. Under the circumstances the objection was abandoned and waived." (*Fibreboard Paper Products Corp. v. East Bay Union of Machinists* (1964) 227 Cal.App.2d 675, 698 [39 Cal.Rptr. 64] (*Fibreboard Paper Products*).)

In *Fibreboard Paper Products*, the Court of Appeal based its decision on two Supreme Court cases, *Goodale v. Thorn* (1926) 199 Cal. 307 [249 P. 11] and *Campbell v. Genshlea* (1919) 180 Cal. 213 [180 P. 336]. In *Goodale*, the defendant was precluded, on appeal, from challenging the sustaining of an objection because, in the trial court, he failed to "mak[e] certain the meaning of the court's ruling." (*Goodale, supra,* 199 Cal. at p. 315.) In *Campbell*, the high court declined to consider whether certain testimony was properly admitted because "there seems to have been no ruling upon the objection." (*Campbell, supra,* 180 Cal. at p. 220.)

■ And the obligation to request a ruling does not impose an undue burden on counsel. He or she need only be diligent, for example, by making an oral request for a ruling. (See Younger on California Motions, *supra,* § 8:55, p. 250; Wegner et al., Cal. Practice Guide: Civil Trials and Evidence (The Rutter Group 2004) ¶ 8:3334.1, p. 8G-10; *City of Long Beach, supra,* 81 Cal.App.4th at pp. 782–784.) Thus, "[i]f evidentiary objections have previously been filed in writing, it is [counsel's] job (tactfully) to *remind the court* at the hearing of the necessity to rule on [the objections]." (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2004) ¶ 10:210.3, p. 10-75.) In this way, the objections are preserved for appeal. (See Younger on California Motions, *supra,* § 8:55, p. 250; Wegner et al., Cal. Practice Guide: Civil Trials and Evidence, *supra,* ¶ 8:3334.1, at p. 8G-10; *City of Long Beach, supra,* 81 Cal.App.4th at pp. 784–785.)

Finally, as for the merits of Gallant's suit, defendants argue that she cannot prevail because their alleged statements were privileged as a matter of law. We disagree.

Defendants contend the alleged defamatory statements were "absolutely privileged" (Civ. Code, § 47, subd. (b)) because they were spoken at a city council meeting when Groomes, the city manager, stated that Gallant's termination was in the best interest of the city. But that is not the defamatory statement upon which Gallant relies, namely, comments made to "staff members and community members" that she was incompetent.

In addition, defendants argue that the alleged defamatory statements are "qualifiedly privileged" (Civ. Code, § 47, subd. (c)) because they were made without malice to interested persons. But Gallant's declaration establishes the probability that she will prove malice. Groomes told her not to contact the city council about Pryce's misdeeds. She did so anyway. A secretary for the City told Gallant that Groomes had left a message that Gallant's subpoenaed grand jury testimony had been continued—when in fact it had not—in an effort to prevent Gallant from appearing before the grand jury. Groomes attempted to coerce Gallant into signing a voluntary resignation. When that failed, Groomes terminated Gallant, notwithstanding the city council's directive not to do so. Groomes falsely told staff members and community members that Gallant was fired because she was incompetent. Penn told another city employee that Gallant had done something illegal with respect to a purchase order.

We therefore reverse.

## III

## DISPOSITION

The order is reversed. Plaintiff is entitled to costs on appeal.

Spencer, P. J., concurred.

**VOGEL, J.,** Dissenting.—When objections are made to evidence offered in support of or in opposition to a motion for summary judgment, the objector must yell and scream and stamp his feet, or do whatever else it takes to force the trial court to rule on those objections. If he doesn't, his objections are waived. The rule is tough enough in the summary judgment context, where it is necessary because the Legislature has said the trial court must consider all evidence except that to which objections have been sustained. But there is no similar legislative fiat in the anti-SLAPP statute, and thus (in my view) no reason for the majority's conclusion that the same rule applies in this case.

I dissent for two reasons. The first is one of judicial restraint, because I do not believe we ought to impose procedural hurdles rejected by the Legislature. My second reason is more pragmatic, and based on my belief that lawyers ought not to be put in the position of haranguing the very judges whose favorable rulings they seek. Judges know they are supposed to rule on evidentiary objections, and those who fail to do so may frown upon the lawyer who presumes to tell the court how to do its job, placing the lawyer in the unenviable position known in chess as "Zugzwang," where a player is obliged to move but cannot do so without disadvantage (Oxford English Dict. (2d ed. 1989) <http://dictionary.oed.com/cgi/entry/50291500?query_type=word&queryword=zugzwang>, as of April 20, 2005). Since meritorious objections were made in this case, I would disregard the inadmissible evidence and affirm the trial court's order of dismissal.

## A.

In a footnote in *Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666 [25 Cal.Rptr.2d 137, 863 P.2d 207], an appeal from a summary judgment (Code Civ. Proc., § 437c),[1] the Supreme Court held thus: "In the trial court, defendants made a series of objections to evidence submitted by Ann M. in opposition to the summary judgment motion. The trial court did not rule on the objections. Because counsel failed to obtain rulings, the objections are waived and are not preserved for appeal. (. . . § 437c, subds. (b) & (c); *Golden West Baseball Co. v. Talley* (1991) 232 Cal.App.3d 1294, 1301, fn. 4 [284 Cal.Rptr. 53]; *Ramsey v. City of Lake Elsinore* (1990) 220 Cal.App.3d 1530, 1540 [270 Cal.Rptr. 198]; *Haskell v. Carli* (1987) 195 Cal.App.3d 124, 129–132 [240 Cal.Rptr. 439] . . . .) Although many of the objections appear meritorious, for purposes of this appeal we must view the objectionable evidence as having been admitted in evidence and therefore as part of the record." (*Ann M. v. Pacific Plaza Shopping Center, supra,* 6 Cal.4th at p. 670, fn. 1.)

## 1.

The summary judgment statute supports the rule, the anti-SLAPP statute does not.

Subdivision (b) of section 437c provides, as relevant, that both the motion for summary judgment and any opposition to the motion must be supported by "affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice shall or may be taken," and that *"[e]videntiary objections not made at the hearing shall be deemed waived."*

---

[1] Undesignated section references are to the Code of Civil Procedure.

(§ 437c, subd. (b)(1), (2), (5), italics added.) Subdivision (c) of section 437c provides, "[i]n determining whether the papers show that there is no triable issue as to any material fact *the court shall consider all of the evidence set forth in the papers, except that to which objections have been made and sustained by the court*, and all inferences reasonably deducible from the evidence . . . ." (Italics added.)

There is no similar provision in section 425.16. In ruling on the motion, the court must "consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based" (§ 425.16, subd. (b)(2)), but there isn't a word in the statute about evidentiary objections or a need to obtain rulings thereon. Our courts have consistently held that a plaintiff opposing a special motion to strike cannot rely on her own pleadings and must produce evidence that would be admissible at trial, but (except as noted below) have not otherwise enlarged the burden of either party beyond that established by the Legislature. (*HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 212 [12 Cal.Rptr.3d 786]; *1-800 Contacts, Inc. v. Steinberg* (2003) 107 Cal.App.4th 568, 584 [132 Cal.Rptr.2d 789].)

## 2.

The three cases cited by the Supreme Court in *Ann M.* are all summary judgment cases.

In *Golden West Baseball Co. v. Talley, supra,* 232 Cal.App.3d at page 1301, footnote 4 (a defense motion for summary judgment), the court explained that the statute required the waiver: "The trial judge never ruled on . . . objections, many of which appear to be meritorious. We are troubled that the absence of such a ruling works in favor of Golden West, especially since it failed to respond to Talley's objections. Under . . . section 437c, subdivision (c), the trial court is required to consider all evidence 'except that to which objections have been made and *sustained* by the court . . . .' (Italics added.) One court has held that the failure to secure a ruling waives the objection, even where the objection was made by the party who eventually prevailed on summary judgment. (*Haskell v. Carli*[*, supra,*] 195 Cal.App.3d, 124, 129 . . . . The terms of the statute would seem to mandate such a waiver."

In *Ramsey v. City of Lake Elsinore, supra,* 220 Cal.App.3d at page 1540 (a defense motion for summary judgment), the plaintiff complained "that the City's showing on the motion for summary judgment was based on the declaration of the City's engineer, Kirchner. Ramsey objected to Kirchner's declaration in the trial court on the ground that no foundation was shown for

Kirchner's statement that the City did not own or control the intersection [where the accident at issue had occurred]. The trial court did not explicitly rule on the admissibility of Kirchner's declaration; counsel's failure to secure a ruling on the objection waives the objection. (*Haskell v. Carli*[*, supra,*] 195 Cal.App.3d 124, 129, 240 Cal.Rptr. 439. . . .)"

In *Haskell v. Carli, supra,* 195 Cal.App.3d at pages 129 to 130 (a plaintiff's motion for summary judgment), the court considered the issue in more detail: "[At the hearing on the motion], no objection was raised to the Carlis' use of [a certain affidavit or the deposition testimony of two witnesses]. It is well settled by statute and case authority that the failure to object, even to otherwise inadmissible evidence, waives the defect. [Citations.] [¶] . . . Even if the objections raised below [to other evidence] could [suffice], the record contains no ruling on any of the objections. Failure of counsel to secure such a ruling waives the objection. [Citations.]

"Although the waiver rules did not apply to summary judgment proceedings prior to the 1980 amendment of . . . section 437c [citation], section 437c, subdivision (b), now provides '[e]videntiary objections not made either in writing or orally at the hearing shall be deemed waived.' Section 437c, subdivision (c), further sets forth that the trial court must consider all evidence unless an objection has been raised and sustained: 'In determining whether the papers show that there is no triable issue as to any material fact the court shall consider all of the evidence set forth in the papers, except that to which objections have been made and sustained . . . .' " (Fns. omitted.)

### B.

I see no basis for extending a waiver rule to a motion based on a statute that could have but did not include the specific language of section 437c, and note that the only case that has done so (*Slauson Partnership v. Ochoa* (2003) 112 Cal.App.4th 1005, 1014, fn. 4 [5 Cal.Rptr.3d 668]) was based on the conclusory assertion that, without regard to the statutory language, "a motion to strike is akin to a summary judgment motion . . . ." (*Ibid.*)

As noted above, before the 1980 amendment to section 437c, the waiver rule did not apply to summary judgment motions. (*Haskell v. Carli, supra,* 195 Cal.App.3d at pp. 129–130; *Dugar v. Happy Tiger Records, Inc.* (1974) 41 Cal.App.3d 811, 817 [116 Cal.Rptr. 412] [in summary judgment proceedings there can be no waiver of the right to object to inadmissible evidence].) In 1980, the Legislature added the "exception" to subdivision (c) of section 437c stating, as it does today, that "[i]n determining whether the papers show that there is no triable issue as to any material fact the court shall consider all

of the evidence set forth in the papers, *except that to which objections have been made and sustained by the court . . . .*" (Stats. 1980, ch. 57, §1, p. 151, italics added; see also *Central Mutual Ins. Co. v. Del Mar Beach Club Owners Assn.* (1981) 123 Cal.App.3d 916, 926 [176 Cal.Rptr. 895].)

Since then, the waiver rule has been consistently applied in summary judgment cases (e.g., *Swat-Fame, Inc. v. Goldstein* (2002) 101 Cal.App.4th 613, 623–624 [124 Cal.Rptr.2d 556], disapproved on another point in *Zamos v. Stroud* (2004) 32 Cal.4th 958, 973 [12 Cal.Rptr.3d 54, 87 P.3d 802]; *Sambrano v. City of San Diego* (2001) 94 Cal.App.4th 225, 234–241 [114 Cal.Rptr.2d 151]; see *Lopez v. Baca* (2002) 98 Cal.App.4th 1008, 1013, fn. 3 [120 Cal.Rptr.2d 281]), but there is no good reason to extend the rule to anti-SLAPP motions.

The Legislature, knowing the change it wrought when it amended subdivision (c) of section 437c in 1980, chose not to include similar language in section 425.16 when it was enacted or when it was thereafter amended (Stats. 1992, ch. 726, § 2, p. 3523; Stats. 1993, ch. 1239, § 1, p. 7106; Stats. 1997, ch. 271, § 1; Stats. 1999, ch. 960, § 1) or when section 425.17 was added to clarify the purpose of section 425.16 (Stats. 2003, ch. 338, § 1). Since the Legislature is presumed to know the law and to make these distinctions intentionally, not whimsically, it seems to me that we should not by judicial fiat amend that legislative decision. (*Pasadena Police Officers Assn. v. City of Pasadena* (1990) 51 Cal.3d 564, 576 [273 Cal.Rptr. 584, 797 P.2d 608] ["When the Legislature 'has employed a term or phrase in one place and excluded it in another, it should not be implied where excluded' "].)

The cases relied on by the majority, *Schoendorf v. U.D. Registry, Inc.* (2002) 97 Cal.App.4th 227 [118 Cal.Rptr.2d 313], and *Gallagher v. Connell* (2004) 123 Cal.App.4th 1260, 1266–1269 [20 Cal.Rptr.3d 673], are inapposite. No proper objection was made in the trial court in *Gallagher,* and *Schoendorf* doesn't even consider the issue of waiver. Conversely, the only issue on this appeal is (or should be) whether evidentiary objections are preserved when they are made in writing but the trial court has failed to rule on them. Since cases are not authority for propositions not considered (*Chevron U.S.A., Inc. v. Workers' Comp. Appeals Bd.* (1999) 19 Cal.4th 1182, 1195 [81 Cal.Rptr.2d 521, 969 P.2d 613]), there is no support for the majority opinion.

## C.

Without the inadmissible evidence, the order of dismissal would have to be affirmed.

### 1.

From August 2000 to November 2003, Ann Marie Gallant worked as the City of Carson's general manager of development services, with a multi-million dollar budget and a staff of about 100 employees (almost one-fourth of the city's workforce). Throughout that time, Gallant reported to Jerome Groomes, the city manager. In January 2002, Gallant saw a fax from Robert Pryce (a contract attorney for the city) to James Ambroso (an executive at Browning-Ferris Industries, which was then bidding for a solid waste franchise agreement with the city) in which Pryce told Ambroso about a competitor's bid. Gallant reported the disclosure to Groomes. In October, Gallant was subpoenaed to testify before a grand jury investigating the bid disclosure. After Gallant testified, the city's mayor and mayor pro tempore were arrested, and both later pleaded guilty to unspecified crimes.

### 2.

In the fall of 2003, Groomes (with the city council's approval) terminated Gallant's employment. Gallant, in turn, filed a government tort claim with the city (Gov. Code, § 900 et seq.), which was later rejected.

On November 1, the Daily Breeze (a local newspaper) published an article, *Terminated City Official Files Claim For Damages*, identifying Gallant as a "former top Carson official" and describing her government tort claim—in which (according to the Daily Breeze) she related the facts about the bid disclosure, claimed that Groomes had instructed her "to not tell" the city council about the bid disclosure and agreed to do so himself after she refused to be put off, reported that she had testified before the grand jury, claimed that Groomes (with the help of George Penn, the assistant city manager) had tried to force her to resign, and alleged that she had been fired in retaliation for her grand jury testimony.

According to the Daily Breeze: "Gallant was hired by Carson three years ago. She had previously worked as deputy administrator of the Los Angeles Redevelopment Agency, but agreed to step down, according to several *Los Angeles Times* articles in 1999 and 2000. [¶] Gallant was accused of misleading board members on a property appraisal and suspended over a disputed expense account, according to one *Times* report, which also quotes an attorney for two employees who were fired by the agency and later awarded $580,000 for wrongful termination. . . ."

### 3.

In January 2004, Gallant sued the city, Groomes, and Penn for damages, alleging two causes of action, one for wrongful termination (against the city

only), the other for defamation. Gallant alleges the discovery of the fax and the events described above, and claims she was, as a result, "subjected to a continuing pattern of retaliatory, malicious, and harassing treatment" from Groomes and Penn. She claims her phones were tapped, her mail screened, her e-mails surreptitiously intercepted and, ultimately, her employment terminated.

With regard to her defamation cause of action, she alleges that the city, Groomes and Penn maliciously "published false, unprivileged statements" to Gallant's "co-workers and other members of the public that she was incompetent, a statement known at the time to be false." She alleges that Groomes and Penn told "various" city employees and the general public that Gallant's " 'termination was in the best interest of the City,' " thereby (according to Gallant) imputing to her "a general disqualification in those respects which her profession peculiarly requires." She does not say when these statements were made, or whether they were oral or written, or who heard or read them. The only actual statement alleged is the one quoted, that her termination was "in the best interest of the City."

## 4.

The city filed its special motion to strike Gallant's defamation cause of action (§ 425.16), acknowledging that Groomes had in fact told the city council that Gallant's termination was in the "best interest of the City" (or words to that effect), but claiming it was a protected comment about the qualifications and performance of a public official, and thus protected by the anti-SLAPP statute.

In opposition to the motion, Gallant offered her own declaration and one from Debbie Torres (an administrative specialist in development services employed by the city), both to the effect that Groomes had told various city employees that Gallant was terminated because she was "incompetent." Torres also said she had heard Groomes say that Gallant "was a liar and did not tell the truth."

In reply, the city offered a "clarify[ing]" declaration from Torres, explaining that she had never really heard Groomes say that Gallant was a "liar" or even that she was "incompetent." Rather, Groomes had told her that Gallant was terminated because she "did not meet . . . Groomes' expectations regarding keeping him informed and involved as to her activities on behalf of the City," and that they "did not 'get along,' " statements Torres understood to mean that Gallant's performance did not meet Groomes's expectations. And Groomes never said Gallant was a "liar"—he simply said that Gallant's government tort claim, as described by the Daily Breeze article, was "false."

The city also filed written objections to Gallant's declaration—the statements about what she "learned from a number of [her] subordinate employees"—on hearsay grounds (Evid. Code, § 1200), and to other evidence submitted by Gallant.

The trial court granted the motion to strike the defamation cause of action, construing the cause of action as one for slander and finding the statements were privileged within the meaning of section 425.16, and finding also that Gallant had failed to present *any* evidence that the statements were false, thus making it clear that she could not prevail on the merits of this claim.

### 5.

The majority simply assumes the anti-SLAPP statute applies to this case, then reverses based on its conclusion that Gallant has shown a probability of success on the merits. Plainly, the statute *does* apply, and Gallant cannot avoid its consequences (a) by her assertion that it does not apply or (b) by her assertion that she will probably prevail on the merits of her claim.

Subdivision (b)(1) of section 425.16 provides that "[a] cause of action against a person arising from any *act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue* shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (Italics added.)

Subdivision (e) of the same statute provides, as relevant, that as used in section 425.16, " '*act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue*' includes: (1) any written or oral statement . . . made before a legislative [or] executive . . . proceeding . . . ; (2) any written or oral statement . . . made in connection with an issue under consideration or review by a legislative [or] executive . . . body . . . ; (3) any written or oral statement . . . made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of . . . free speech in connection with a public issue or an issue of public interest."

Gallant's complaint does not say where or when the allegedly defamatory statement (that her termination was in the city's best interest) was made, or whether it was oral or written. In his declaration in support of the city's motion, Groomes assumes Gallant is referring to a statement he made during

discussions with the city council, at which time he "offered [his] opinion that . . . Gallant's termination was in the City's best interest, or words to that effect," an opinion he formed because he "did not feel that she was fulfilling her obligations as Development Services General Manager." Since this evidence stands unrebutted, it is plain that the allegedly defamatory statement was made during a legislative proceeding *and* concerned a matter of public interest within the meaning of subdivision (e) of section 425.16. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1121–1122 [81 Cal.Rptr.2d 471, 969 P.2d 564]; *Damon v. Ocean Hills Journalism Club* (2000) 85 Cal.App.4th 468, 473 [102 Cal.Rptr.2d 205]; *Levy v. City of Santa Monica* (2004) 114 Cal.App.4th 1252, 1258–1259 [8 Cal.Rptr.3d 507]; *Bradbury v. Superior Court* (1996) 49 Cal.App.4th 1108, 1116 [57 Cal.Rptr.2d 207].)

By showing that the statement was protected by subdivision (e) of section 425.16, the city met its burden (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88 [124 Cal.Rptr.2d 530, 52 P.3d 703]), and it was then up to Gallant to show that she had a "probability of prevailing on [her defamation] claim." (*Ibid.*) She did not do so, and in fact offered no evidence to show that her termination was *not* in the city's best interests, an omission fatal to her challenge to the trial court's ruling. (*HMS Capital, Inc. v. Lawyers Title Co., supra,* 118 Cal.App.4th at p. 212 [in opposing an anti-SLAPP motion, the plaintiff cannot rely on the allegations of her complaint but must produce evidence that would be admissible at trial]; *1-800 Contacts, Inc. v. Steinberg, supra,* 107 Cal.App.4th at p. 584.)

To demonstrate that she could prevail on her defamation claim, Gallant had to show that Groomes or Penn or someone else acting for the city made a *false* and *unprivileged statement of fact* within the meaning of Civil Code section 46. (*Gregory v. McDonnell Douglas Corp.* (1976) 17 Cal.3d 596, 604 [131 Cal.Rptr. 641, 552 P.2d 425]; *Schmidt v. Foundation Health* (1995) 35 Cal.App.4th 1702, 1716 [42 Cal.Rptr.2d 172].) A statement is not slanderous if it does no more than imply a false fact (*Gill v. Hughes* (1991) 227 Cal.App.3d 1299, 1309 [278 Cal.Rptr. 306]; *Pulver v. Avco Financial Services* (1986) 182 Cal.App.3d 622, 638 [227 Cal.Rptr. 491]), or if it is nothing more than the opinion of the speaker (*Rosenaur v. Scherer* (2001) 88 Cal.App.4th 260, 278–280 [105 Cal.Rptr.2d 674]; *Savage v. Pacific Gas & Electric Co.* (1993) 21 Cal.App.4th 434, 445 [26 Cal.Rptr.2d 305]). Quite plainly, Gallant's defamation cause of action fails because Groomes's statement, generously construed, is nothing more than an implication of something

that might be false or a statement of an opinion, and in either event it is privileged. More to the point, there is no evidence that the statement is false, and there is no *admissible* evidence of any other wrongdoing by Groomes or anyone else.

I would affirm.

A petition for a rehearing was denied May 6, 2005, and respondents' petition for review by the Supreme Court was denied August 10, 2005. Werdegar, J., did not participate therein.