[Nos. A115535, A116307. First Dist., Div. Five. May 30, 2008.]

U.S. WESTERN FALUN DAFA ASSOCIATION, Plaintiff and Appellant, v. CHINESE CHAMBER OF COMMERCE, Defendant and Appellant.

592

COUNSEL

Holme Roberts & Owen, Roger Myers, Katherine Keating, Isela Castaneda; Breall & Breall and Joseph H. Breall for Plaintiff and Appellant.

Renne Sloan Holtzman Sakai, Randy Riddle, K. Scott Dickey and Steve Cikes for Defendant and Appellant.

OPINION

SIMONS, J.—For more than 50 years the San Francisco Chinese Chamber of Commerce (the Chamber)[1] has sponsored a series of events to commemorate the Chinese New Year. A "Chinese New Year Parade" (Parade), a "Community Street Fair" (Street Fair), and a "Flower Market Fair" (Flower Fair), are among the activities conducted by the Chamber to educate the public on the subjects of Chinese culture and history. Each is open to the public to *attend*. U.S. Western Falun Dafa Association (Falun Gong) has applied multiple times to *participate* in one or more of these events, usually without success. Falun Gong sued the Chamber alleging it violated the Unruh Civil Rights Act (Civ. Code, § 51 et seq.) (Act) by denying Falun Gong's applications to participate. Falun Gong appeals from the trial court's order granting the Chamber's motion to strike the Act claim pursuant to Code of Civil Procedure section 425.16 (A115535).[2] Falun Gong contends that the trial court erred because Falun Gong's allegations were not based on conduct in furtherance of the Chamber's right to free speech, and because Falun Gong has established a probability of prevailing on its claim. We disagree. Each of the Chamber's events is expressive, and the First Amendment bars the government from compelling the Chamber to include in the presentation of its message the very different message communicated by Falun Gong.

In the unpublished portion of this opinion, we address an appeal by the Chamber from the trial court's order granting its motion for attorney fees (A116307), contending the trial court erred in reducing its requested attorney fees by two-thirds. We agree with the Chamber's contentions and reverse the order granting attorney fees and costs.

---

[1] The Chamber "is a non-profit civic organization whose stated mission is to advance the business interests of the Chinese community."

[2] All undesignated section references are to the Code of Civil Procedure.

We will sometimes refer to section 425.16 as the anti-SLAPP (strategic lawsuit against public participation) statute.

## BACKGROUND

### *The Complaint*

Falun Gong's first amended complaint, filed in February 2006, alleges in part as follows: Falun Gong is a group of "practitioners of a Chinese self-cultivation practice group that originated in China and is practiced throughout the world." The Parade is an annual event organized by the Chamber, and the Street Fair is "part of the festivities for Chinese New Year that occurs immediately prior to the Parade."

In the lunar years corresponding to 2000 through 2003, the Chamber denied Falun Gong's applications to participate in the Parade and Street Fair. In 2004, the Chamber allowed Falun Gong to participate in the Parade, but not the Street Fair. Falun Gong was informed it had been excluded from the Street Fair because it opposed the policies of the Chinese government. In 2005, the Chamber again rejected Falun Gong's application to participate in the Parade. Then, "[a]t the last minute," the Chamber allowed Falun Gong to participate as the last entry in the Parade; however, the Chamber stopped Falun Gong before it entered Chinatown so that the Chinese government officials in attendance could exit the review stand.

In 2006, Falun Gong again applied to participate in the Parade. The Chamber denied Falun Gong's application, stating that the Parade could not accommodate everyone who wanted to participate. The Chamber also denied Falun Gong's application to operate a booth at the Street Fair. A letter from the Chamber's Street Fair director, Arnold Chin, stated that "I personally told you that your group(s) would be denied participation because of the political posture and position of the Falun Gong's views. This policy is in conformity with the Parade Committee decision to reject your request for participation."

The foregoing allegations are incorporated by reference in each of the complaint's three causes of action.[3] The second cause of action, brought by

---

[3] The first and third causes of action are brought by Eva Chuk (Chuk), an individual, against the City and County of San Francisco (CCSF). Chuk alleges that she is a San Francisco taxpayer and a Falun Gong practitioner, and brings this claim for illegal expenditure of CCSF funds on behalf of San Francisco taxpayers. (§ 526a.) In the first cause of action, Chuk seeks an injunction against the CCSF prohibiting future funding to the Parade and an order requiring the Chamber to reimburse any funds received for the 2006 Parade. In the third cause of action she seeks a judicial declaration that the CCSF's funding of the Parade violates the antidiscrimination provisions of the San Francisco Administrative Code, section 12C. The court denied the Chamber's motion to strike the first and third causes of action on the ground that the Chamber was not a party to these causes of action and therefore had no standing to bring a motion to strike. The ruling as to the first and third causes of action is not an issue in this appeal, and CCSF is not a party to this appeal.

Falun Gong against the Chamber, is the subject of this appeal and contains the Act claim. It alleges in relevant part: "[Falun Gong] continually attempted to apply for the services provided by [the Chamber] to all members of the San Francisco Community in general and the Chinese Community in particular. This includes but is not limited [to] all street fairs, cultural events, and other community activities sponsored and promoted by [the Chamber]. [¶] . . . [The Chamber] has and continues to discriminate against [Falun Gong] by denying it access to all events sponsored by [the Chamber] due to [Falun Gong's] beliefs. In addition, [the Chamber] openly supports the Chinese Government's persecution of [Falun Gong], which has led to both persecution and violence in the United States. [¶] . . . [The Chamber's] wrongful conduct is continuing in that [the Chamber] continues to deny [Falun Gong's] practitioners the full and equal accommodations, advantages, facilities, and services of the [Chamber], including but not limited to participation in Chinese New Year festivities, and all cultural and civil activities afforded to other groups." Falun Gong seeks damages and an injunction against the Chamber.

### The Anti-SLAPP Motion

In April 2006, the Chamber filed an anti-SLAPP motion as to the first amended complaint. In support of its motion, the Chamber submitted two declarations from Wayne Hu (Hu), a member of the Chamber and the director of the Parade. Hu declared that since 1958, the Chamber has organized and produced the San Francisco Chinese New Year Festival. The festival "includes a string of intimately connected and intertwined events designed by the Chamber to educate the public on the subjects of Chinese culture and history and to encourage participation in the New Year celebration." These events include the Parade, the Street Fair, and the Flower Fair, and are free and open to the public.

Hu declared that the Parade is a procession of over 100 groups including school marching bands, stilt walkers, martial arts groups, lion dancers, and Chinese acrobats. It has been televised since 1987, and attracts over three million spectators and television viewers. Participants proceed along the parade route into Chinatown and the Street Fair.

Hu further declared that the Street Fair is a two-day event held in Chinatown during the weekend of the Parade. The Street Fair has hundreds of exhibitors, including exhibitors promoting Chinese culture and history. The Street Fair's center stage hosts cultural performances such as lion dancing,

folk dancing, exhibitions of Chinese music, puppet shows, and martial arts displays. The Street Fair also has a children's area where children can learn how to perform lion dances, and learn about Chinese toys, games, and calligraphy. It attracts between 250,000 and 400,000 attendees each year. The Flower Fair is the Festival's first event, held the weekend before the lunar New Year. The Flower Fair begins with a miniparade with lion dancers and fireworks. Participants operate booths selling fresh flowers, fruit, candy, and other supplies for the New Year.

Hu stated that participation in the Parade, Street Fair, and Flower Fair is by invitation only. To participate in the Parade or to operate a booth at the Street Fair or Flower Fair, applicants must submit an application to the Chamber. In selecting participants for the Parade, the Chamber considers how the applicant will contribute to expressing themes related to Chinese New Year, and how the applicant will visually enhance the parade's appearance for spectators and the television audience. In choosing participants for the Street and Flower Fairs, the Chamber gives preference to businesses and community service organizations operating within Chinatown. The Chamber does not accept applications from groups who seek to promote a particular political message, even if that political message is related to the interests of the Chinese community. Since 1971, it has been the Chamber's practice to prevent participation in the Festival by groups who intend to use it as a platform to express political beliefs. Hu further stated that this restriction "is necessary to prevent political groups from obscuring the Festival's message—the promotion of education of and participation in Chinese Culture—in controversy."

In opposition to the Chamber's motion, Falun Gong filed declarations from Huy Lu (Lu) and Chuk. Lu stated that he was a member of Falun Gong and had submitted applications to the Chamber to operate a booth at the 2004 and 2006 Street Fairs and the 2004 Flower Fair, and each had been rejected. Lu declared that "the street fairs are separate from the . . . Parade both as an event and as an application process, even though . . . Hu attempts to link the street fairs and parade together."

Chuk stated that she also was a member of Falun Gong, and also submitted an application for the 2006 Street Fair, which the Chamber rejected. She further declared that "the decision of who will be granted a booth in the street fairs is not public knowledge and generates little to no interest outside of the applicants that seek rental of a booth. The street fair itself has no television or radio coverage and is no different th[a]n the myriad of street fairs held through[out] San Francisco during any given year."

The Chamber filed objections to the evidence offered in support of Falun Gong's opposition to the anti-SLAPP motion, along with a request for a ruling on their objections. Falun Gong also submitted objections to the evidence submitted in support of the Chamber's reply and a request for a ruling on those objections. The court did not rule on either set of objections.

In May 2006, the court held a hearing on the Chamber's anti-SLAPP motion. In July, the court issued a written order granting the Chamber's motion to strike the second cause of action. The court stated that Falun Gong lacked representative standing to assert an Act claim because it had not sufficiently alleged harm to its members in the first amended complaint. The court further stated that the Chamber's decision to exclude Falun Gong was protected under the First Amendment because the Street Fair was an expressive event and mandating Falun Gong's inclusion would interfere with the Chamber's ability to communicate its own message. Falun Gong filed a timely notice of appeal from the court's order striking the second cause of action.

### The Motion for Attorney Fees and Costs

In September 2006, the Chamber filed a motion for attorney fees and costs pursuant to section 425.16, subdivision (c). The Chamber sought a base lodestar amount of $85,674 for time spent on the anti-SLAPP motion and the fee petition, and requested a lodestar multiplier of 1.75. Thus, the Chamber sought a total of $149,929.50 in attorney fees, and an additional $517.32 in costs. Falun Gong opposed the motion, arguing that the time spent by the Chamber's attorneys was unreasonable and duplicative, a multiplier was inappropriate, and the total fees should be reduced because the Chamber had achieved only partial success. The Chamber filed a reply, requesting an additional base lodestar amount of $10,266 in fees for time spent on the reply memorandum and the hearing on the fee motion. Thus, the total amount of attorney fees and costs sought by the Chamber was $168,412.32.

On November 8, 2006, the court heard argument on the fee motion. On November 17, it issued a written order granting the Chamber's motion for attorney fees in the amount of $28,558. The order stated that no lodestar multiplier had been applied and "[t]he attorneys fees requested are reduced to one-third, because two of three causes of action were denied because of no standing." The Chamber filed a timely notice of appeal from the court's order granting attorney fees and costs.

The two appeals were consolidated.

## DISCUSSION

I. *Falun Gong's Appeal from the Court's Dismissal of the Second Cause of Action*

### A. *Anti-SLAPP Statute*

Under section 425.16, subdivision (b)(1), "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

■ "Section 425.16, subdivision (b)(1) requires the court to engage in a two-step process." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685] (*Equilon*).) First, the court determines whether the moving defendant has made a threshold showing that the challenged causes of action arise from protected activity, that is, activity by defendants in furtherance of their constitutional right of petition or free speech. (*Id.* at p. 67.) These protected acts include (1) written or oral statements made before a legislative, executive, or judicial proceeding; (2) written or oral statements made in connection with an issue under consideration or review by a legislative, executive, or judicial body; (3) written or oral statements made in a place open to the public or in a public forum in connection with an issue of public interest; or (4) any other conduct in furtherance of the exercise of the constitutional rights of petition or free speech in connection with a public issue or an issue of public interest. (§ 425.16, subd. (e).)

Second, if the court finds that the defendant has met its initial burden, it then determines whether the plaintiff has demonstrated a probability of prevailing on its claim. (*Equilon, supra,* 29 Cal.4th at p. 67.) To satisfy this prong, "the plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' [Citations.] In deciding the question of potential merit, the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant (§ 425.16, subd. (b)(2)); though the court does not *weigh* the credibility or comparative probative strength of competing evidence, it should

grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim. [Citation.]" (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821 [123 Cal.Rptr.2d 19, 50 P.3d 733].) We review the trial court's ruling de novo. (*Mann v. Quality Old Time Service, Inc.* (2004) 120 Cal.App.4th 90, 103 [15 Cal.Rptr.3d 215] (*Mann I*).)

### B. *The Second Cause of Action was Based on Protected Activity**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### C. *Probability of Prevailing*

Falun Gong next contends that the trial court erred in concluding that Falun Gong had no probability of prevailing on its Act claim. Falun Gong argues that (1) it had standing to sue under the Act, both as an organization in its own right and as a representative of its members, and (2) the Street and Flower Fairs are not expressive and, therefore, mandating inclusion of Falun Gong would not interfere with the Chamber's First Amendment rights. Even if Falun Gong has standing to sue, it has no probability of prevailing. Because the Street and Flower Fairs are expressive events and because requiring the Chamber to admit Falun Gong as a participant in the events would interfere with the message expressed in them, the First Amendment protects the Chamber's selection decision.

"[A]lthough section 425.16 places on the plaintiff the burden of substantiating its claims, a defendant that advances an affirmative defense to such claims properly bears the burden of proof on the defense. [Citation.]" (*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 676 [35 Cal.Rptr.3d 31].) In addition, in assessing whether the plaintiff has a probability of prevailing, the court does not weigh the credibility or comparative strength of the competing evidence, but instead should grant the motion "if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim." (*Wilson v. Parker, Covert & Chidester, supra,* 28 Cal.4th at p. 821.) The Chamber asserted the First Amendment as an affirmative defense to Falun Gong's Act claim, and bears the burden of proving, as a matter of law, that the Street and Flower Fairs are expressive activities that merit First Amendment protection.

---

*See footnote, *ante*, page 590.

In *Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, Inc.* (1995) 515 U.S. 557 [132 L.Ed.2d 487, 115 S.Ct. 2338] (*Hurley*), the organizer of South Boston's St. Patrick's Day-Evacuation Day Parade denied participation to a group of gay, lesbian and bisexual descendents of Irish immigrants (GLIB) who wished to march in the parade. (*Id.* at pp. 560–561.) The Massachusetts high court held that exclusion of GLIB from the parade violated the antidiscrimination provisions of the state's public accommodations statute, and rejected the parade organizer's argument that mandating GLIB's admission would interfere with its First Amendment rights. (*Hurley*, at pp. 563–564.) The United States Supreme Court reversed, holding that mandating inclusion of GLIB "violates the fundamental rule of protection under the First Amendment, that a speaker has the autonomy to choose the content of his own message." (*Hurley*, at p. 573.)

■ First, *Hurley* concluded that the parade was expressive. Parades are generally expressive, as they involve "marchers who are making some sort of collective point, not just to each other but to bystanders along the way." (*Hurley, supra*, 515 U.S. at p. 568.) The South Boston parade, in particular, was expressive, as "[s]pectators line the streets; people march in costumes and uniforms, carrying flags and banners with all sorts of messages (*e. g.*, 'England get out of Ireland,' 'Say no to drugs'); marching bands and pipers play; floats are pulled along; and the whole show is broadcast over Boston television." (*Id.* at p. 569.) The expressive content of the parade was not diminished by the fact that the organizers were lenient about admitting participants (*id.* at pp. 569–570), or that the parade had no "particularized message": "if confined to expressions conveying a 'particularized message,' [citation], [constitutional protection] would never reach the unquestionably shielded painting of Jackson Pollock, music of Arnold Schoenberg, or Jabberwocky verse of Lewis Carroll." (*Id.* at p. 569.) GLIB's participation in the parade was equally expressive: the group sought to march in the parade "to celebrate its members' identity as openly gay, lesbian, and bisexual descendants of the Irish immigrants." (*Id.* at p. 570.) The court concluded that the parade organizer "clearly decided to exclude a message it did not like from the communication it chose to make, and that is enough to invoke its right as a private speaker to shape its expression by speaking on one subject while remaining silent on another." (*Id.* at p. 574.)

Second, *Hurley* rejected GLIB's argument that its inclusion would not threaten the parade organizer's right to free speech because the organizer was merely a conduit for speech. The court held that GLIB's message would likely be identified with the parade organizer, "because GLIB's participation would likely be perceived as having resulted from the [organizer's] customary determination about a unit admitted to the parade, that its message was

worthy of presentation and quite possibly of support as well." (*Hurley, supra,* 515 U.S. at pp. 575–576.) *Hurley* distinguished *Turner Broadcasting System, Inc. v. FCC* (1994) 512 U.S. 622 [129 L.Ed.2d 497, 114 S.Ct. 2445], which upheld regulations requiring cable operators to reserve channels for certain broadcast signals. *Hurley* stated that there was a "common practice" by which cable operators could disclaim responsibility for views expressed on their broadcasts, but reasoned that "[p]arades and demonstrations, in contrast, are not understood to be so neutrally presented or selectively viewed," and therefore "there is no customary practice whereby private sponsors disavow 'any identity of viewpoint' between themselves and the selected participants." (*Hurley,* at p. 576.) The court concluded that "[w]ithout deciding on the precise significance of the likelihood of misattribution, it nonetheless becomes clear that in the context of an expressive parade, as with a protest march, the parade's overall message is distilled from the individual presentations along the way, and each unit's expression is perceived by spectators as part of the whole." (*Id.* at p. 577.) The court also noted that disclaimers would be impractical in a moving parade. (*Id.* at pp. 576–577.)

Falun Gong argues that *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.* (2006) 547 U.S. 47 [164 L.Ed.2d 156, 126 S.Ct. 1297] (*FAIR*), not *Hurley,* governs the determination of the expressive nature of the Street and Flower Fairs. In *FAIR,* an association of law schools and law faculties sought to exclude military recruiters from their campus job fairs "because they object to the policy Congress has adopted with respect to homosexuals in the military." (*FAIR,* at p. 52.) Section 983 of title 10 of the United States Code, the Solomon Amendment, however, required the Department of Defense to deny federal funding to institutions of higher education that prohibited military representatives access to and assistance for recruiting purposes. (*FAIR,* at p. 51.) The United States Supreme Court held that this law did not violate the law schools' First Amendment rights: "In this case, accommodating the military's message does not affect the law schools' speech, because the schools are not speaking when they host interviews and recruiting receptions. Unlike a parade organizer's choice of parade contingents, a law school's decision to allow recruiters on campus is not inherently expressive. Law schools facilitate recruiting to assist their students in obtaining jobs. A law school's recruiting services lack the expressive quality of a parade, a newsletter, or the editorial page of a newspaper . . . ." (*FAIR,* at p. 64.) The court also rejected the law schools' argument that they "could be viewed as sending the message that they see nothing wrong with the military's policies, when they do." (*Id.* at pp. 64–65.) The court held the military recruiters' speech would not likely be attributed to the law schools,

because the law schools were free to disassociate themselves from the military's views, and students could appreciate the difference between school-sponsored and nonsponsored speech. (*Id.* at p. 65.)

*Hurley* is more apt. Hu declares that the Street and Flower Fairs are "designed by the Chamber to educate the public on the subjects of Chinese culture and history and to encourage participation in the New Year celebration." To communicate this message, the Chamber holds the Street and Flower Fairs at a particular time (Chinese New Year) and in a particular place (Chinatown). The events and activities at the Street and Flower Fairs further contribute to the Chamber's message. The Street Fair has exhibitors promoting Chinese culture and history, a center stage with cultural performances such as lion dancing, folk dancing, exhibitions of Chinese music, puppet shows, and martial arts displays, and a children's area where children can learn how to perform lion dances and learn about Chinese toys, games, and calligraphy. The Flower Fair begins with a miniparade with lion dancers and fireworks, and participants sell fresh flowers, fruit, candy, and other supplies for the New Year. The expressive nature of these events is similar, if not identical, to *that of* the parade in *Hurley*, and merits First Amendment protection.

■ Falun Gong's participation would also be expressive. In 2004, when permitted to take part in the parade, Falun Gong members distributed "pamphlets containing information regarding . . . Falun Gong's beliefs, political views and practices." And the Chamber's selection of participants in the Street and Flower Fairs, like the selection of parade participants in *Hurley*, promotes the Chamber's message(s), in part by ignoring those of others. The Chamber has reasonably concluded that inclusion of Falun Gong, a group seeking to promote a particular political message, would interfere with the message the Chamber seeks to communicate. When an event is expressive, the selection of some and rejection of other applicants seeking to participate is an important mechanism in shaping the message conveyed. Unlike in *FAIR*, it cannot be said that the Chamber is "not speaking" when it hosts the Street and Flower Fairs, or that requiring the Chamber to accept the participation by Falun Gong in the Street and Flower Fairs "does not sufficiently interfere with any message" of the Chamber. (*FAIR, supra,* 547 U.S. at p. 64.)

Falun Gong contends that the commercial aspects of the Street and Flower Fairs demonstrate that they are not expressive. Falun Gong argues that street fairs are generally more commercial in nature than parades, and points to evidence that booths at the Flower Fair sell products for the New Year and

the "Flower Fair's purpose essentially limits participation only to merchants who sell cultural products." However, neither the Street Fair nor the Flower Fair is purely commercial; for example, the Street Fair has a center stage with cultural performances, and the Flower Fair begins with a miniparade with lion dancers and fireworks. Moreover, Falun Gong cites no authority for the proposition that the Street and Flower Fairs are less expressive simply because they sell merchandise or have commercial elements. (See *Startzell v. City of Philadelphia* (E.D.Pa., Jan. 18, 2007, No. 05-05287) 2007 U.S.Dist. Lexis 4082, *38 (*Startzell*).)

Falun Gong argues that the evidence regarding the expressive nature of the Street and Flower Fairs is disputed and, therefore, the Chamber has not demonstrated as a matter of law that the Street and Flower Fairs are expressive. Falun Gong relies heavily on the declarations submitted with its opposition, which state that the "street fairs are separate from the . . . Parade both as an event and as an application process," and that, unlike the Parade, the "street fair itself has no television or radio coverage and is no different th[a]n the myriad of street fairs held through[out] San Francisco during any given year."[5]

Even crediting these statements as true as we must (*Wilson v. Parker, Covert & Chidester, supra*, 28 Cal.4th at p. 821), they do not undermine the Chamber's evidence regarding the expressive nature of the Street and Flower Fairs. Even if the Street and Flower Fairs are separate events from the Parade and have separate application processes, the Chamber's evidence nevertheless demonstrates that the Street and Flower Fairs are organized for the same expressive purpose as the Parade. In addition, though media coverage may help prove that an event is expressive, Falun Gong has presented no authority requiring such coverage; an event without media coverage may also be expressive. Finally, the statement that the Street and Flower Fairs are "no different" from other street fairs in San Francisco is so vague as to be meaningless, and does not contradict any of the Chamber's factual assertions.

---

[5] The Chamber filed evidentiary objections to this evidence in the trial court, and contends on appeal that its objections were not waived. In the anti-SLAPP context, evidentiary objections are waived when counsel does not seek or obtain rulings on its evidentiary objections at the hearing (*Gallant v. City of Carson* (2005) 128 Cal.App.4th 705, 710, 713 [27 Cal.Rptr.3d 318] [" '[i]f evidentiary objections have previously been filed in writing, it is [counsel's] job (tactfully) to *remind the court* at the hearing of the necessity to rule on [the objections]' "]), unless counsel's further requests for a ruling would have been futile (*Siam v. Kizilbash* (2005) 130 Cal.App.4th 1563, 1580 [31 Cal.Rptr.3d 368]). Here, the Chamber filed a written request for a ruling on the same date that it filed its evidentiary objections. However, the trial court did not rule upon the Chamber's objections at the hearing, and the Chamber did not orally request a ruling at the hearing. Therefore, we deem the Chamber's evidentiary objections waived.

 Falun Gong relies on *Parks v. City of Columbus* (6th Cir. 2005) 395 F.3d 643 (*Parks*) to argue that a street fair, unlike a parade, must have a "very specific" or "particular" message to warrant First Amendment protection. We disagree. *Hurley* held a parade could be expressive, though it lacked a particularized message, and neither law nor logic compels the conclusion that the Street and Flower Fairs fall outside the scope of *Hurley* simply because they are stationary events rather than moving processions. Courts have recognized that *Hurley*'s "precepts hold equally for stationary assemblies" such as political rallies. (*Schwitzgebel v. City of Strongsville* (N.D. Ohio 1995) 898 F.Supp. 1208, 1219; see *Startzell, supra,* 2007 U.S.Dist. Lexis 4082, *35–*36.) In *Startzell,* for example, the court applied *Hurley* to a street festival and held that organizers of a gay pride festival (Outfest) had the right to exclude a group expressing an antigay message. (*Startzell,* at pp. *32–*39.) Outfest was a crowded street festival with vendors, "stages, dance, sports, and amusement areas, a family zone, and a flea market" (*id.* at p. *38), was held in conjunction with National Coming Out Day in the center of Philadelphia's gay community, and was "designed to advance lesbian, gay, and bisexual rights" (*id.* at p. *36). The court concluded that *Hurley* had "broad application beyond parades" (*Startzell,* at p. *35), and found Outfest to be an expressive event (*id.* at p. *35). Although stationary, the Street and Flower Fairs are also expressive events, educating the public regarding Chinese culture and history.

Falun Gong misreads *Parks* to argue that the collective message of the Street and Flower Fairs does not deserve First Amendment protection. In *Parks,* the Columbus (Ohio) Arts Festival (CAF) brought " 'visual and performing artists to the city.' " (*Parks, supra,* 395 F.3d at p. 645.) Parks attended, wearing a sign bearing a religious message and, for that reason, was barred from the CAF. (*Id.* at p. 646.) In the course of reaching its conclusion that Parks's First Amendment rights were violated, the court found that *Hurley* did not provide the CAF with a First Amendment right of its own to exclude a message inconsistent with the one it was expressing. *Parks* stated, "While it is unclear that the [CAF] was actually expressing a particular message, the City [of Columbus] 'submitted that the collective message of the Greater Columbus Arts Council is to bring visual and performing artists to the City [of Columbus] to be enjoyed by those who wish to go to the [CAF].' . . . This is not an expressive message, but merely a purpose for the event. The [CAF] is an event that most likely has many artists who are expressing various messages of their own. It is therefore difficult to determine a collective message for the [CAF] itself. If, however, we were to construe the message of the [CAF] to be 'visual and performance art,' nothing in the record indicates that Parks interfered with or prevented this 'message' from being conveyed." (*Parks,* at p. 651.)

*Parks* did not create a different test of expressiveness for stationary assemblies that was more rigorous than the test *Hurley* imposed on parades. In fact, *Parks* assumed that a collective message warranted protection, but was skeptical the CAF conveyed one. In any event, *Parks* did not turn on the CAF's inability to prove its own message. Instead, *Hurley* was found inapplicable because Parks did "not seek inclusion in the speech of another group." (*Parks, supra,* 395 F.3d at p. 651.) Parks was "merely another attendee of the [CAF], walking up and down the street." (*Ibid.*) As such, Parks did not interfere with any message conveyed by the CAF. Nothing in that case undermines our conclusion that *Hurley* protects the Street and Flower Fairs, and each was entitled to exclude a particular messenger from participation to promote its own, very different message. (See *Hurley, supra,* 515 U.S. at p. 574.)

■ Additional cases relied on by Falun Gong are likewise inapposite. These cases address situations in which individuals promoting a particular viewpoint seek to be *present* in a public place or to *attend* a public event, not to *participate* in that event. In *Pruneyard Shopping Center v. Robins* (1980) 447 U.S. 74 [64 L.Ed.2d 741, 100 S.Ct. 2035], the Supreme Court held that a privately owned shopping center could not exclude a group of high school students who wanted to set up a table in the shopping center courtyard and circulate materials related to a United Nations resolution. The court reasoned that because the shopping center was open to the public, "[t]he views expressed by members of the public in passing out pamphlets or seeking signatures for a petition thus will not likely be identified with those of the owner." (*Id.* at p. 87; see *id.* at pp. 85–87.) Similarly, in *Wickersham v. City of Columbia* (W.D.Mo., Mar. 31, 2006, No. 05-4061-CV-C-NKL) 2006 U.S.Dist. Lexis 15438, affirmed (8th Cir. 2007) 481 F.3d 591, the court held that the organizer of a Memorial Day airshow open to the public could not deny entry to individuals wishing to distribute leaflets at the event. (*Wickersham,* at p. *30.) The court distinguished *Hurley* because the leafleters were not trying to participate in the airshow and were "not even asking to operate a booth." (*Wickersham,* at p. *16.) Instead they merely sought to attend the airshow, and, therefore, "there is no reasonable likelihood that the [leafleters] will be seen as spokesmen for the [event organizer] merely because they are present in a public area of the [a]ir [s]how." (*Id.* at p. *18; see *Parks, supra,* 395 F.3d at p. 651.) The court further noted that there was no evidence in the record that the airshow was perceived to be expressive. (*Wickersham,* at p. *18.) In *Wickersham* and *Pruneyard,* the courts concluded that where individuals merely *attend* a public event, their views are not likely to be identified with those of the event organizer. Falun Gong, by contrast, does not seek merely to attend the Street and Flower Fairs as a spectator, but asks to *participate* in the events by operating a booth.

Finally, Falun Gong contends its presence at the Street and Flower Fairs would not interfere with any expressive activity by the Chamber, because the Chamber could post disclaimers disassociating itself from Falun Gong's views. But if Falun Gong operated a booth at the Street and Flower Fairs, spectators would likely associate the Chamber with Falun Gong's views. It certainly seems unlikely that spectators viewing an array of participants in booths at a street fair will distinguish between those who present sponsored rather than nonsponsored speech. As a result, "[Falun Gong's] participation would likely be perceived as having resulted from the [organizer's] customary determination about a unit admitted to the [Street and Flower Fairs], that its message was worthy of presentation and quite possibly of support as well." (*Hurley, supra,* 515 U.S. at p. 575.) Unlike the law schools and law faculties in *FAIR,* the Chamber cannot easily disassociate itself from the views of its participants. As with the parade in *Hurley,* the overall message of the Street and Flower Fairs "is distilled from the individual presentations" selected by the Chamber, and there is no customary practice by which the Chamber can disclaim responsibility for the views expressed by its participants. (See *Hurley,* at p. 577.) Given the nature of the Street and Flower Fairs, even if the Chamber posted disclaimers disassociating itself from Falun Gong's views, it is likely spectators would associate those views with the Chamber.

■ In sum, the Street and Flower Fairs are expressive events and are entitled to exclude as *participants* those who wish to express their own discordant views. Falun Gong could have held its own fair or *attended* the Street and Flower Fairs and expressed its views verbally or by signs, pamphlets or other paraphenalia. (See *Sistrunk v. City of Strongsville* (6th Cir. 1996) 99 F.3d 194, 199.) It had no right to insist on being included in the Chamber's expressive activity. Falun Gong has no probability of success on the claim in its second cause of action.[6]

II. *The Chamber's Appeal from the Court's Award of Attorney Fees and Costs*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[6] Because of our conclusion that the Street and Flower Fairs are expressive activities, entitled to the protection of the First Amendment, we need not discuss the Chamber's contention that because the second cause of action is based in part on the Parade allegations and Falun Gong has no probability of prevailing on these allegations, the entire cause of action lacks merit.

[*]See footnote, *ante,* page 590.

## DISPOSITION

The order granting the Chamber's motion to strike Falun Gong's Act claim is affirmed (A115535). The order granting the Chamber's motion for attorney fees and costs is reversed and remanded for recalculation, consistent with this opinion, of the Chamber's attorney fees and costs (A116307). The Chamber is entitled to attorney fees and costs on appeal.

Jones, P. J., and Needham, J., concurred.

The petition of appellant U.S. Western Falun Dafa Association for review by the Supreme Court was denied August 20, 2008, S164983.