Filed 4/13/15  Falls v. Hunt & Henriques CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| RONALD FALLS, | D065796 |
| Plaintiff, Cross-Defendant and Respondent, | |
| v. | (Super. Ct. No. 37-2013-00053402-CL-BT-CTL) |
| HUNT & HENRIQUES, | |
| Defendant, Cross-Complainant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Timothy B. Taylor, Judge.  Affirmed.

Simmonds & Narita, Michael R. Simmonds and Tomio B. Narita for Defendant, Cross-Complainant and Appellant.

Recordon & Recordon, Stephen G. Recordon; Law Offices of Clinton Rooney, Clinton J. Rooney; The Christison Law Firm and Randall B. Christison for Plaintiff, Cross-Defendant and Respondent.

Plaintiff and respondent Ronald Falls (Falls) brought a complaint for damages against defendant and appellant Hunt & Henriques (Hunt), a law firm, and its former client Midland Funding, LLC (Midland; not a party to this appeal), seeking to recover under two debtor protection statutory schemes. As against Hunt, Falls claims it violated the Fair Debt Collections Practice Act (FDCPA), title 15 United States Code section 1692 et. seq.[1] Falls alleged Midland, a debt collector, violated the same provisions, and it additionally acted improperly under the related state scheme, the Rosenthal Fair Debt Collection Practices Act (Civ. Code, § 1788 et seq.; the RFDCPA). Previously, Midland was legally represented by Hunt when it sued Falls in San Diego Superior Court to recover money he owed to a bank on a consumer credit card, after the bank closed out his account in 2009 and referred the matter to collection. (*Midland Funding v. Falls* (Super. Ct. San Diego, 2012, No. 37-2012-00078442-CL-CL-SC) (the underlying action).)

Falls responded by filing the current lawsuit, claiming improper FDCPA procedures were followed (e.g., § 1692f ["A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt"]). Hunt brought a special motion to strike the claims against it pursuant to the anti-SLAPP statutory scheme, Code of Civil Procedure section 425.16.

Hunt appeals from the denial of its motion to strike. Although the trial court agreed with Hunt that the conduct complained of "arose" from actions in furtherance of protected litigation conduct, the trial court ruled against Hunt on the second prong of the

---

[1] All further section references are from the FDCPA, title 15 United States Code section 1692 et seq., unless otherwise stated.

inquiry.  (Code Civ. Proc., §425.16, subd. (b)(1); *Navellier v. Sletten* (2002) 29 Cal.4th 82, 88-89 (*Navellier*).)  The trial court concluded Falls had adequately demonstrated " ' "that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." ' "  (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820 (*Oasis*).)  The court ruled that inferences could be drawn from the evidence that Hunt had engaged in unlawful means of attempting to collect a debt, and that it cannot be decided as matters of law if its affirmative defenses have merit.  No attorney fees were awarded.

On appeal, Hunt agrees the trial court correctly found the anti-SLAPP statutory scheme was applicable to its protected conduct, but argues the court erred as a matter of law in the second part of the analysis, by finding that Falls had sufficiently shown a probability of prevailing.  According to Hunt, de novo review of the record will only support a conclusion that the complaint against it should be disposed of on the strength of its affirmative defenses, one of which claims that Falls had unclean hands when he failed to keep his address updated with the bank.  (Civ. Code, § 1788.21 [RFDCPA duties of debtor].)[2]  Hunt further asserts that any inaccuracies in its choice of venue were only bona fide errors, and it is therefore entitled to assert an FDCPA statutory defense as a matter of law.  (§ 1692k(c).)

Based on the pleadings and evidentiary submissions in the record, we conclude the trial court correctly denied the motion to strike with respect to the second prong of the

_____

[2]    Civil Code section 1788.17 in the RFDCPA requires compliance with the federal act's provisions.

3

analysis.  (Code Civ. Proc., § 425.16, subd. (b)(1).)  The trial court appropriately analyzed the respective showings on the special motion to strike, by treating the remaining disputes as requiring factual resolution of threshold issues before any statutory or other defenses could properly be applied.  We affirm the order denying the motion.

FACTUAL AND PROCEDURAL BACKGROUND

A.  Background on Underlying Action

In determining whether the anti-SLAPP statutory scheme properly applies to this set of allegations, we look to the pleadings and the respective showings on the motion.  (*Navellier, supra*, 29 Cal.4th 82, 88-89.)  In September 2012, Hunt filed the underlying *Midland* complaint against Falls for breach of contract, in San Diego County.  Its process server left the complaint at Falls's friend's home in Chula Vista (Mr. Lee Ricks), where Falls sometimes received packages to be forwarded to him.  Hunt filed a proof of service of summons with the process server's declaration of reasonable diligence, that he was told by Ricks that Falls received mail at this address.  Hunt later sought an entry of Falls's default in the action.

Falls learned from his friend about the filing of the underlying action, and he notified Hunt that he left California in 1996 and had lived in Singapore since 2006.  Falls brought a motion to quash service of summons, which was granted, and the court found that the substituted service on Falls's friend had been ineffective.

Falls filed this complaint in June 2013, seeking individual recovery against Hunt under the FDCPA.  He requested actual and statutory damages, as well as an award of attorney fees and costs.  (§ 1692k(a); Civ. Code, § 1788.30, subds. (a)-(c).)  Falls asserted

4

Hunt's violations of law were willful and knowing. In paragraphs 30 through 32 of the complaint, he alleged that the underlying action was wrongfully filed in San Diego County, the proof of service was false and the default had been sought wrongfully.

Both Hunt and Midland filed answers to this complaint.

### B. Motion to Strike, Opposition and Ruling

Hunt filed its anti-SLAPP motion to strike the complaint against it, arguing that all the allegations attacked only protected litigation conduct. Hunt provided declarations from two attorneys, one a Hunt partner, outlining the procedures it had followed in researching the whereabouts of Falls. They contended the search was adequate and satisfied the terms of the FDCPA. (§ 1692k(c).)[3] Hunt had learned from its client Midland that Falls's last known address was in Chula Vista, and it obtained a San Diego area code telephone number for Falls from an inquiry through the credit reporting firm Experian. Hunt contended that Falls had failed to keep his creditors updated with current addresses, and this constituted unclean hands because it violated Civil Code section 1788.21 (duties of a debtor).[4]

---

[3]     Section 1692k(c) provides this defense: "A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."

[4]     Civil Code section 1788.21 requires a debtor to be responsible for notifying creditors of any change in name, address, or employment, if the creditor has disclosed this responsibility to the debtor.

In opposition, Falls contended he had presented sufficient evidence that he would probably prevail on at least a part of his claims, as indicated by the defective nature of the search that Hunt and Midland had conducted. Falls claimed that he could easily be found in Singapore, that he had received credit card statements online since 2006, and Hunt had ignored the information given to it that he lived overseas. He argued that Hunt could not assert the affirmative defense of unclean hands, suggesting it was a common law matter potentially preempted by federal law (but not arguing this on appeal).

Falls's declaration opens by stating he has not lived anywhere in California since 1996. "While living in the U.S.," he opened the subject account. He notified the bank that issued him the card (Washington Mutual) of his change of address in 2006, when he moved to Singapore. When another bank (Chase) took over his account in 2009, he updated his telephone number with it. In May 2012, Hunt or Midland called his mother in Texas to ask about his whereabouts, and she told them he never lived with her in Texas. After the process server left the summons and complaint at his friend's Chula Vista address, Falls called one of the Hunt attorneys and made it clear that he lived in Singapore. However, the request for default was nevertheless filed in the underlying action, showing that Hunt continued to pursue the case, and Falls argued this amounted to continuing violations of the FDCPA. Falls also submitted declarations from his mother, his friend and his attorney.

Falls's request for judicial notice attached pleadings and orders filed in the underlying action. The court granted his request to the extent that judicial notice could be taken of the filing of documents, and of the truth of matters represented in orders and

6

judgments. (*People v. Harbolt* (1997) 61 Cal.App.4th 123, 126-127.) The court rejected the evidentiary objections that Hunt filed with its reply papers, that some of Falls's declarations contained hearsay.

In Hunt's reply, it contended that the complaint had possibly been filed in the proper venue, based on Falls's recent admission in his declaration that he had opened the credit card account while living in the United States, apparently between 1996 and 2006. It thus contended that Falls could not show he had a legally and factually sufficient claim, because Hunt's affirmative defenses were sufficient to dispose of the complaint.

At the hearing, counsel for Hunt represented that the underlying action was not being pursued after the granting of Falls's motion to quash. The trial court heard argument and issued an order denying the motion to strike the complaint. The court ruled that although Hunt met the first prong of the analysis, by showing that the complaint arises from protected speech activity, Falls had met his responsive burden of showing that he would probably prevail. The court ruled that the evidence was susceptible of permissible inferences that Hunt had engaged in unlawful debt collection activities, by pursuing Falls in California when it knew or should have known of his true address in Singapore. Assuming that an unclean hands defense was applicable, Hunt had failed to establish the merits of one or both of its affirmative defenses as matters of law.

Hunt appeals the order. (Code Civ. Proc., § 425.16, subd. (i).) By stipulation, the remainder of the action, including the claims against Midland and the claims by Hunt in its cross-complaint, has been stayed pending this appeal.

DISCUSSION

I

*ANTI-SLAPP STATUTORY PROVISIONS; PRONG ONE*

Well-accepted authorities establish a two-step process for applying Code of Civil Procedure section 425.16, subdivision (b)(1):  " 'First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. . . .  If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim.' "  (*Taus v. Loftus* (2007) 40 Cal.4th 683, 712 (*Taus*)*; Oasis*, *supra*, 51 Cal.4th 811, 820.)

To establish this probability of prevailing, Falls " 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.'  [Citations.]  For purposes of this inquiry, 'the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant ([Code Civ. Proc.,] § 425.16, subd. (b)(2)); though the court does not *weigh* the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim.'  [Citation.]  In making this assessment it is 'the court's responsibility . . . to accept as true the evidence favorable to the plaintiff . . . .'  [Citation.]  The plaintiff need only establish that his or her claim has 'minimal merit'

8

[citation] to avoid being stricken as a SLAPP.' " (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 291 (*Soukup*); *Navellier, supra,* 29 Cal.4th at p. 89.)

On appeal, we assess the trial court's rulings by reviewing the record de novo, including the determinations made about the sufficiency of a litigant's showing on liability or defenses in his pleadings and affidavits. (*Oasis*, *supra*, 51 Cal.4th 811, 820.) Those sufficiency rulings present legal questions and issues of law. (*Soukup, supra,* 39 Cal.4th at p. 269, fn. 3; *Damon v. Ocean Hills Journalism Club* (2000) 85 Cal.App.4th 468, 474.)

As did the trial court, we accept that the allegations in this complaint "arise" from protected statements and conduct. We next consider whether Falls has shown his probability of prevailing on any part of his claim, thus establishing his cause of action has some merit and is entitled to further adjudication. (*Oasis*, *supra*, 51 Cal.4th 811, 820; *Mann v. Quality Old Time Service, Inc.* (2004) 120 Cal.App.4th 90, 106 (*Mann*).)

II

*FALLS'S PROBABILITY OF PREVAILING; PRONG TWO*

A. Scope of Legally Sufficient Issues Presented by Complaint

Remedial statutes enacted for public protection, such as the RFDCPA, should be interpreted broadly to effectuate their purposes. (*Komarova v. National Credit Acceptance, Inc.* (2009) 175 Cal.App.4th 324, 340; Civ. Code, § 1788.17 [federal law incorporated into RFDCPA].) We first inquire whether Falls demonstrated that the complaint is legally sufficient, for purposes of showing he will probably prevail in this action. (*Navellier, supra*, 29 Cal.4th 82, 88-89; *Taus, supra*, 40 Cal.4th 683, 714.)

9

The parties dispute whether the complaint is broadly pled enough to encompass two types of statutory violations, beyond section 1692f, which prohibits the use of "unfair or unconscionable means" to collect debts. Falls's complaint also includes allegations that Hunt's filing the complaint in an improper venue under section 1692i, and then continuing to prosecute it, show its use of unfair or unconscionable means of debt collection. (§ 1692f.)

Hunt claims its decision to file the complaint in the underlying action in San Diego was legally defensible, based on the information it had (and it thus asserts the bona fide error defense, § 1692k(c)). Hunt seeks to have stricken at least those portions of the current complaint that challenge its decision on where to file the underlying complaint, in a similar procedure to the way that other courts have treated "mixed" causes of action in the anti-SLAPP context.

The anti-SLAPP case law debates whether the courts should properly strike a complaint's allegations that attack a defendant's protected activity, if they are presented within a "mixed" cause of action that alleges both protected or unprotected conduct. (*Cho v. Chang* (2013) 219 Cal.App.4th 521, 526.) This approach would allow any of the plaintiff's unprotected theories to survive for adjudication. (E.g., *Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1554 [see conc. & dis. opn. of Needham, J., at p. 1557 on distinction between "claim" and "cause of action"]; *Wallace v. McCubbin* (2011) 196 Cal.App.4th 1169, 1199; *City of Colton v. Singletary* (2012) 206 Cal.App.4th 751, 772-773; *Burrill v. Nair* (2013) 217 Cal.App.4th 357, 378 [views expressed that are contrary to *City of Colton* majority opinion].) Hunt

10

thus contends its affirmative defenses should have been deemed sufficient to dispose of part of the complaint, at least, by showing that the pleading is legally and factually insufficient as to the venue allegations.

To the extent Falls attacks the Hunt decision to file the complaint in San Diego, he now seems to be arguing that Hunt's factual claims about venue were raised only in its reply papers and/or on appeal. Falls thus argues that Hunt is seeking to impermissibly expand the evidence in the record, by focusing on potential evidence that would support a conclusion that San Diego Superior Court was in fact the proper venue (i.e., Falls's admission in his declaration that he opened the subject credit card account while living in the United States, apparently between 1996 and 2006; see § 1692i [venue provisions]).[5] At this point, the record contains only exemplar credit card contracts, and it does not establish where and when Falls signed one. The bottom line is that the record is not yet clear on this subject.

For purposes of applying the anti-SLAPP test on legal sufficiency of the pleadings, it is appropriate to read the complaint broadly and as a whole, as defining the issues. This complaint alleges that different and continuing types of unfair or unconscionable conduct allegedly occurred during the attempts to collect this debt. The claims against Hunt are not mixed causes of action, and the trial court correctly found (regarding prong 1) that they arose from protected activity. In any event, the

---

5    Under section 1692i(b), a debt collector's legal action against an individual may be brought "only in the judicial district or similar legal entity -- [¶] (A) in which such consumer signed the contract sued upon; or [¶] (B) in which such consumer resides at the commencement of the action."

11

circumstance that Hunt filed an answer to the complaint suggests that Hunt had some level of understanding of the legal sufficiency of the statutory claims against it. Under all the circumstances, we are not required to "parse" the complaint to address the arguments about whether some allegations should be stricken, and others permitted to survive. (See, e.g., *Cho v. Chang*, *supra*, 219 Cal.App.4th 521, 526.)

### B. Analysis: Role of Hunt's Affirmative Defenses; Falls's Prima Facie Showing of Favorable Facts to Sustain Judgment?

We emphasize that it is not now before us whether Falls has or claims any good defenses to the debt that was alleged in the underlying action. (See *Yu v. Signet Bank/Virginia* (2002) 103 Cal.App.4th 298, 322-323 (*Yu*) ["the circumstances under which a debt is incurred are irrelevant to a claim based on collection of the debt through distant forum abuse"]; *Yu v. Signet Bank/Virginia* (1999) 69 Cal.App.4th 1377, 1395-1396; cf. *Baker v. G. C. Services Corp.* (9th Cir. 1982) 677 F.2d 775, 777 [debtor has standing to complain of violations of the FCPCA regardless of whether valid debt exists].) Instead, the proper inquiry focuses on Falls's showing he will "probably" prevail on the full scope of his cause of action against Hunt, based on his prima facie case. (*Taus, supra*, 40 Cal.4th 683, 714; *Oasis, supra*, 51 Cal.4th 811, 820.)

As outlined above, we take the complaint on its face to be broadly alleging different kinds of allegedly improper debt collection conduct, under one or more sections of the FDCPA, pertaining to the place of filing and/or the later pursuit of allegedly defective claims. The trial court took a fact specific approach and expressly ruled that

12

Falls had provided adequate evidence to support inferences that the FDCPA may have been violated.

In comparing the respective showings made during the motion proceedings, anti-SLAPP analysis permissibly includes consideration of the disputed effect of Hunt's affirmative defenses upon Falls's ability to make out his prima facie case. " '[A]lthough [Code of Civil Procedure] section 425.16 places on the plaintiff the burden of substantiating its claims, a defendant that advances an affirmative defense to such claims properly bears the burden of proof on the defense.' " (*U.S. Western Falun Dafa Assn. v. Chinese Chamber of Commerce* (2008) 163 Cal.App.4th 590, 599; Evid. Code, § 500 [burden of proving an affirmative defense on party asserting it]; *Mann*, *supra*, 120 Cal.App.4th 90, 106-109 [discussing whether Civ. Code, § 47, subds. (b) & (c) litigation and conditional privileges can be applied to a given set of facts as matters of law; *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 675-676 (*Peregrine Funding*) [some defenses such as limitations or standing can be asserted as matters of law].) Our inquiry is limited to whether Hunt's two forms of affirmative defenses must be deemed dispositive on this record, as matters of law.

First, Hunt's asserted defense of unclean hands is based on the RFDCPA section requiring a consumer to keep a lender apprised of a change in a billing address. (Civ. Code, § 1788.21, subd. (a).) In general, "[T]he equitable defense of unclean hands is available in this state as a defense to a legal action." (*Fibreboard Paper Products Corp. v. East Bay Union of Machinists* (1964) 227 Cal.App.2d 675, 728 (*Fibreboard Paper*).)

13

The court in *Yu*, *supra*, 103 Cal.App.4th 298, 323 addressed the sufficiency of a complaint that the debt collector had committed "distant forum abuse," and the response of the debt collector that the debtor had unclean hands. The court declined strict application of that equitable doctrine in that instance, observing that "the unclean hands doctrine is one that 'protects the court's, rather than the opposing party's, interests.' " (*Ibid.*) The court in *Yu* restricted the use of an unclean hands defense to attack the debtor's alleged "cavalier" bad attitude toward repayment, therefore allowing the debtor's action to proceed and to claim forum abuse, due to the courts' "strong interest" in deterring forum abuse. (*Id.* at pp. 322-323; see *Peregrine Funding, supra,* 133 Cal.App.4th 658, 681, citing and quoting *Kendall-Jackson Winery, Ltd. v. Superior Court* (1999) 76 Cal.App.4th. 970, 978-979, 985 ["any evidence of a plaintiff's unclean hands in relation to the transaction before the court or which affects the equitable relations between the litigants in the matter before the court should be available to enable the court to effect a fair result in the litigation"].)

"[A] plaintiff's burden as to the second prong of the anti-SLAPP test is akin to that of a party opposing a motion for summary judgment. [Citation.] The causes of action need only be shown to have 'minimal merit.' " (*Yu*, *supra*, 103 Cal.App.4th 298, 317-318; *Navellier, supra,* 29 Cal.4th at p. 89.) Under this type of analysis, it is apparent that application of the unclean hands doctrine at this stage of the proceedings would impermissibly require a factual inquiry, as well as some kind of weighing of the relevant policy interests. Such an approach would go well beyond the current anti-SLAPP analytical framework. As did the trial court, we shall assume without deciding that an

14

unclean hands defense can properly be asserted here, and that resolving it on its merits would be premature at this time.

Next, regarding whether the underlying complaint was filed in the proper venue, this record does not properly allow resolution of a statutory defense under section §1692k(c) (bona fide error despite protective procedures in place).  We cannot determine as a matter of law whether the terms of section 1692i, establishing venue rules, were violated.  As the record stands, Falls has provided submissions showing, on a prima facie basis, that Hunt's investigation was inadequate or its procedures improper.  Proving the applicability of a bona fide error defense will undoubtedly require factual inquiries and weighing of the relevant interests, which are not well suited to the anti-SLAPP rubric for evaluating and giving credit to a plaintiff's prima facie evidentiary case.  Inferences to be drawn from all the evidence could go either way, concerning this law firm's participation in materially unfair or unconscionable means of attempted debt collection, as defined by one or more sections of the FDCPA.  (Cf. *Tourgeman v. Collins Financial Services, Inc.* (9th Cir. 2014) 755 F.3d 1109, 1119 [under § 1692e, a debt collector's use of " ' "any false, deceptive, or misleading representation or means in connection with the collection of any debt," ' " is forbidden if it is material, and such liability is decided as an issue of law].)

The trial court had an adequate basis in the record to determine that a preliminary evaluation of the available evidence does not rule out Falls as the party who will probably prevail on the merits.  (See *Burrill v. Nair*, *supra*, 217 Cal.App.4th 357, 382.)  On this record, it would not be appropriate to determine that Falls's action is wholly defeated by

15

the defenses asserted or that it lacks even minimal merit. (*Oasis*, *supra*, 51 Cal.4th at

p. 820; Code Civ. Proc., § 425.16, subd. (b)(1).)

## DISPOSITION

The order is affirmed. Costs of appeal are awarded to Falls.


                                             _____

                                              HUFFMAN, Acting P. J.

WE CONCUR:


_____

                HALLER, J.


_____

                AARON, J.